**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 12 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KEVIN CHARLES GWINN,

      Plaintiff-Appellant,

v.

JERRY AWMILLER; JACKIE
GIAMP; DONNA RANDOLPH;
JOHN DOE, LINDA FISHER, JANE
DOE; SHELLY J. MOORE; MERYL
DORHMAN; CHARLES OLIN;
MARGARET HEIL; DENNIS
KLEINSASSER; and JIM MICHAUD,

      Defendants-Appellees.

No. 00-1485

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 99-WM-308)**

---

Megan Curtiss and Stephen Cribari, University of Denver College of Law,
Denver, Colorado (Robert Foster, University of Denver College of Law, with her
on the briefs), for the Plaintiff-Appellant.

Joseph P. Sanchez, Assistant Attorney General, State of Colorado (Ken Salazar,
Attorney General of Colorado with him on the briefs), for the Defendants-
Appellees.

Before **HENRY** , **McKAY** , Circuit Judges, and **OBERDORFER** , District Judge. *

**HENRY,** Circuit Judge.

Kevin Charles Gwinn appeals the district court's order granting summary judgment against him and in favor of the defendant Colorado Department of Corrections (CDOC) officials on his 42 U.S.C. § 1983 civil rights claim. Mr. Gwinn asserted various claims arising out of his classification as a sexual offender. In particular, Mr. Gwinn alleged that CDOC officials: (1) violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to provide him with an adequate hearing before classifying him as a sex offender, requiring him to register as a sex offender, and revoking his parole for failing to participate in a treatment program for sex offenders; (2) violated his Fifth Amendment rights by denying him the opportunity to earn good time credits at a higher rate after he refused to participate in a treatment program for sexual offenders; (3) violated the Ex Post Facto Clause by applying a Colorado statute enacted after the alleged commission of the sexual offense; (4) violated the Eighth Amendment by classifying him as a sex offender and requiring him to

---

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

-2-

register as one; (5) violated his First Amendment rights by refusing to allow him to object to his classification as a sex offender; and (6) violated his rights under the Equal Protection Clause of the Fourteenth Amendment by treating him differently than other inmates convicted of similar offenses.

For the reasons set forth below, we conclude that as to Mr. Gwinn's due process challenge to his classification as a sex offender while incarcerated, the district court properly granted summary judgment to the defendant CDOC officials. However, we further conclude that the district court did not adequately consider Mr. Gwinn's due process claims insofar as they concern his classification as a sex offender upon release from prison. Accordingly, as to that claim we vacate the district court's grant of summary judgment and remand the case for further proceedings.

As to Mr. Gwinn's Fifth Amendment, Ex Post Facto, Eighth Amendment, First Amendment, and Equal Protection claims, we agree with the district court that the defendants are entitled to summary judgment.

## I. BACKGROUND

Viewed in the light most favorable to him, see Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), the record indicates that in 1987, Mr. Gwinn was charged in Colorado state

court with robbery, aggravated robbery, and sexual assault. He pleaded guilty to robbery, and the sexual assault charge was dismissed. The court sentenced him to ten years' imprisonment on the robbery charge.

In 1990, the CDOC informed Mr. Gwinn that, as a result of the sexual assault charge, he would be required to complete a treatment program for sex offenders. One of the requirements of the treatment program was that Mr. Gwinn admit that he had committed the sexual assault charged in the 1987 case.

Initially, Mr. Gwinn stated that he had committed the assault. He then completed the first phase of the treatment program. He began the second phase of program, but CDOC officials removed him from the program because of two violations of prison disciplinary rules.

In 1995, prison officials released Mr. Gwinn on parole. According to Mr. Gwinn, his parole officer, the defendant Linda Fisher, informed him that he was required to register with the Denver Police Department as a sex offender and attend a community treatment program or he would be returned to prison for violation of his parole. Mr. Gwinn alleges that he was denied employment when background checks revealed that he had been classified as a sex offender.

Mr. Gwinn further alleges that in 1996, a Colorado court convicted him of possession of a controlled substance and ordered him to participate in a drug treatment program. According to Mr. Gwinn, he left the program after learning

that his classification as a sex offender made him ineligible to participate.

In 1998, Mr. Gwinn began serving a sentence for possession of a controlled substance. He was released on parole in February 2000, and one of the conditions of his parole was to participate in a treatment program for sex offenders. Mr. Gwinn alleged that his parole was revoked several months later, in part because he refused to participate in the treatment program.

On July 20, 2000, the Department of Corrections held an administrative hearing to determine whether Mr. Gwinn, then in prison again, should be classified as a sex offender. Mr. Gwinn chose not to attend the hearing, but he submitted a written statement in support of his position that he should not be so classified. The hearing panel reviewed Mr. Gwinn's written statement and the preinvestigation report from the 1987 conviction, which included the summary of an interview with the victim of the alleged sexual assault. The panel determined that classification of Mr. Gwinn as a sex offender was appropriate.

Mr. Gwinn filed this pro se civil rights action seeking an injunction directing prison officials not to classify him as a sex offender, as well as damages. The district court adopted the report and recommendation of the magistrate judge and granted the defendants' motion for summary judgment.

Although he initially proceeded pro se in this appeal, this court subsequently appointed counsel for Mr. Gwinn. Appointed counsel has filed

supplemental briefs addressing the due process and Fifth Amendment claims.

On January 21, 2003, during the pendency of this appeal, Mr. Gwinn was released

from incarceration.

## DISCUSSION

On appeal, Mr. Gwinn challenges the district court's grant of summary

judgment as to all of his claims. We review the grant of summary judgment de

novo, applying the same standard as the district court pursuant to Rule 56(c) of

the Federal Rules of Civil Procedure. See United States v. AMR Corp., 335 F.3d

1109, 1113 (10th Cir.2003). Summary judgment is appropriate if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). We view the record in the light most favorable to the nonmoving party.

See AMR Corp., 335 F.3d at 1113.

## A. Due Process Claim

The Fourteenth Amendment provides that citizens may not be deprived of

life, liberty, or property without due process. See Chambers v. Colorado Dep't of

Corr., 205 F.3d 1237, 1242 (10th Cir. 2000). Our prior decisions have

acknowledged that while "[f]inding . . . a [procedural due process] violation in the prison setting is particularly daunting, <u>id.</u>, "'a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime.'" <u>Id</u>. (quoting <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555-56 (1974)); <u>see also</u> <u>Wolff</u>, 418 U.S. at 556 (stating that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country").

Here, it is Mr. Gwinn's liberty interests that are at issue: he alleges that the defendants deprived him of those interests without affording him the procedural protections required by the Due Process Clause. In particular, Mr. Gwinn argues that during his incarceration, CDOC officials classified him as a sex offender when he had not been convicted of a sexual offense and when he asserted that he had not committed the sexual assault charged in the 1987 case. He further contends that his parole officer, the defendant Linda Fisher, required him to register as a sex offender when he had not been convicted of a sex offense, also depriving him of a liberty interest without an adequate hearing and thereby violating his procedural due process rights.

"'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name." <u>Jensen v. Redevelopment Agency of Sandy City</u>, 998 F.2d 1550,

1558 (10th Cir. 1993) (quoting <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 437 (1971)). Damage to one's reputation alone, however, is not enough to implicate due process protections. <u>See</u> <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976) (stating that "reputation alone, apart from some more tangible interests such as employment, is neither 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause"); <u>McGhee v. Draper</u>, 639 F.2d 639, 643 (10th Cir. 1981) ("[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.").

Instead, a plaintiff asserting that the government has violated the Due Process Clause by impugning his or her "good name, reputation, honor, or integrity," <u>Jensen</u>, 998 F.2d at 1558, must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly altered [his or] her status as a matter of state law." <u>Paul</u>, 424 U.S. at 710-11. This is sometimes described as the "stigma plus" standard.[2]

Accordingly, Mr. Gwinn's due process claims require us to apply that

---

[2] <u>See, e.g.</u>, <u>Cannon v. City of West Palm Beach</u>, 250 F.3d 1299, 1302 (11th Cir. 2001); <u>Cutshall v. Sundquist</u>, 193 F.3d 466, 479 (6th Cir. 1999); <u>WMX Techs., Inc. v. Miller</u>, 197 F.3d 367, 376 (9th Cir. 1999); <u>Greenwood v. New York</u>, 163 F.3d 119, 124 (2d Cir. 1998).

standard to his classification as a sex offender during his incarceration and to the defendant Fisher's allegedly requiring him to register as a sex offender while on parole.

1. Classification as a Sex Offender During Incarceration

As we have noted, the CDOC has classified Mr. Gwinn as a sex offender since 1990 and has required him to participate in treatment programs for sex offenders. The CDOC based its classification upon the presentence report in a criminal case filed in Colorado in 1987. In that earlier case, Mr. Gwinn was initially charged with committing a first-degree sexual assault in September 1986, but that charge was dropped as part of a plea agreement under which Mr. Gwinn pleaded guilty to robbery. The presentence report in that case contains an account of a sexual assault allegedly committed by Mr. Gwinn. See Rec. doc. 43, Attach. (Defendants' Motion for Summary Judgment, quoting presentence report).

According to the CDOC, Mr. Gwinn initially admitted that he had committed the alleged 1986 sexual assault. See id. However, Mr. Gwinn now denies that he committed the assault and alleges that the CDOC did not provide him with a constitutionally adequate opportunity to rebut the account of the alleged sexual assault set forth in the presentence report in the state court case.

As the magistrate judge acknowledged, this procedural due process claim is

governed by our decision in <u>Chambers</u>, 205 F.3d at 1242-44. There, some seven years after the plaintiff inmate began serving his sentences for aggravated robbery and attempted theft, CDOC officials directed him to participate in a treatment program for sex offenders, even though he had "never admitted to or been convicted of a sex offense." <u>Id.</u> at 1240. Like Mr. Gwinn's classification, the classification of Mr. Chambers as a sex offender was based on a victim's account contained in a written report. <u>See id</u>. at 1238-39 (discussing the victim's account in a police report). As a result of the classification, the CDOC reduced the monthly rate at which plaintiff accrued good time credits. <u>See id.</u> at 1239. Like Mr. Gwinn, Mr. Chambers alleged that prison officials had violated his procedural due process rights by relying on the report to classify him a sex offender without first providing him with an opportunity to contest the report's allegations.

We agreed with Mr. Chambers, noting that it was the loss of the previously granted opportunity to earn good time credits at a higher level, combined with his classification as a sex offender, that implicated a liberty interest. <u>Id.</u> at 1242. Mr. Chambers had thus established that (1) CDOC officials had made a statement about him or her that was sufficiently derogatory to injure his or her reputation, that was capable of being proved false, and that he asserted was false, and that (2) he had experienced some governmentally imposed burden that "significantly altered [his or] her status as a matter of state law." <u>Paul</u>, 424 U.S.

at 710-11.

Accordingly, we held that Mr. Chambers was entitled to an injunction preventing the CDOC from withholding earned time credit because he refused to admit to being a sex offender. Id. at 1243. However, "because the state of the law was not clearly established when these actions were taken," id., we further concluded that the defendant CDOC officials were entitled to qualified immunity from his claim for damages.

This court issued Chambers on March 7, 2000—after Mr. Gwinn filed this lawsuit and while he was still incarcerated. Following publication of the Chambers opinion, CDOC officials determined that they would provide Mr. Gwinn with a hearing at which he could contest his classification as a sex offender. In July 2000, CDOC officials served Mr. Gwinn with a notice explaining that "as a result of a recent court decision [Chambers] [the C]DOC will offer the opportunity for an Administrative Review to any offender who has never been convicted of a sex offense . . . but has a history of sexual behavior that may justify a sex offender designation." Rec. doc 71 (Ex. A) (Notice of Right to an Administrative Review, dated July 17, 2000). The notice proceeded to set forth the section of the presentence report from the 1987 criminal case in which a witness reported that Mr. Gwinn had sexually assaulted her. See id.

After receiving the notice, Mr. Gwinn submitted a written statement

indicating that he had not committed a sexual assault. Mr. Gwinn also declared that due to a bipolar disorder, he did not wish to appear in person before the hearing panel assigned to his case but instead would rely on his written statement.

A three-member CDOC Hearing Panel convened on July 20, 2000. One of the members of the panel was Meryl Dorhman, a CDOC counselor whom Mr. Gwinn had named as a defendant in this case. Each of the panel members signed a declaration that they would not disclose any confidential information regarding Mr. Gwinn's medical records or his classification as a sex offender unless such disclosure was ordered by a court. After considering the presentence report from the 1987 case and Mr. Gwinn's statement, the panel issued written findings that: (1) Mr. Gwinn had "behaved in a sexually violent and abusive manner;" (2) his behavior "could threaten the safety of the public upon release, or the safety of prison staff" because he had "not offered any credible explanation that would avoid the conclusion that [he had] behaved in a sexually violent and/or abusive manner." Id. at Ex. E (Decision on Sex Offender Designation, dated July 24, 2000).

Mr. Gwinn now argues that in spite of this opportunity for a hearing, CDOC officials violated his due process rights. He contends that the defendant prison officials applied an improper presumption–that he was a sex offender–and required him to rebut it. He also argues that the defendants should have provided

him with an attorney.  In support of that contention, he invokes his bipolar

disorder, which he states made it impossible for him to provide an effective

defense and adds that even though CDOC officials offered to provide him with an

inmate representative, this was not an adequate protection because inmates cannot

talk confidentially with other inmates about sex offenses. See Aplt's Opening Pro

Se Br. at 19 ("It is taboo for an inmate accused of a sexual offense to speak to

other inmates about the offense.").  Finally, Mr. Gwinn argues that because the

chairman of the panel—Mr. Dorhman—is a defendant in this case, the Hearing

Panel was biased.  See id. at 20.

Mr. Gwinn's challenges are not expressly resolved by our opinion in

Chambers.  There, because the plaintiff inmate received no hearing whatsoever,

we were not required to address the particular procedural protections that must be

provided to inmates who have never been convicted of a sex offense before prison

officials may classify them as sex offenders in a manner that deprives them of a

liberty interest.

However, in Chambers we relied on the Ninth Circuit's decision in Neal v.

Shimoda, 131 F.3d  818 (9th Cir. 1997).  There, the court held that an inmate who

has not previously been convicted of a sex offense may be classified as a sex

offender for purposes of a prison treatment program only if the prison affords him

the procedural protections to which prisoners facing disciplinary sanctions

-13-

involving liberty interests are generally entitled. See id. at 830-31. Here, because there is no dispute that Mr. Gwinn's classification as a sex offender reduced the rate at which he could earn good time credits and implicated a liberty interest, we conclude that Mr. Gwinn, like the plaintiff in Chambers, was entitled to those same procedural protections.

Those procedural requirements are set forth in the Supreme Court's decision in Wolff, 418 U.S. 539: notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. See Neal, 131 F.3d at 830 (adopting these requirements for a hearing regarding the classification of an inmate as a sexual offender); Mitchell v. Maynard, 80 F.3d 1433, 1445 (10th Cir. 1996) (discussing the requirements for prison disciplinary hearings under Wolff). Additionally, in order to comport with due process, there must be some evidence to support the hearing panel's decision id., and the decisionmaker must be impartial. See Wolff, 418 U.S. at 592 (Marshall, J., concurring) (stating that "an impartial decisionmaker is a fundamental requirement of due process" that is "fully applicable" to disciplinary hearings for prisoners); Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990) (recognizing due process requirement of factfinder's neutrality in prison disciplinary context and citing Wolff)).

In light of the <u>Wolff</u> requirements, we conclude that Mr. Gwinn's argument that the Hearing Panel applied an improper presumption lacks merit. As we have noted, the record indicates that the Hearing Panel relied on a detailed written account from the victim of the alleged sexual assault and that Mr. Gwinn himself presented no more than a general written denial of the allegations. The Supreme Court has observed that, in ascertaining whether a factfinder's decision in a prison disciplinary hearing is sufficiently supported by the evidence, a reviewing court need not undertake an "examination of the entire record, independent assessment of witnesses' credibility or weighing of the evidence. Instead, the relevant conclusion is whether there is any evidence that could support the conclusion reached by the disciplinary board." <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455-56 (1985). Moreover, the decision can be upheld even if the evidence supporting the decision is "meager." <u>Id.</u> at 457. In light of the statement in the presentence report that Mr. Gwinn committed a sexual assault, we conclude that the Hearing Panel did not violate his due process rights by applying an improper presumption.[3]

_____

[3] We emphasize that the Hearing Panel's conclusion that Mr. Gwinn "has behaved in a sexually violent and abusive manner," Rec. doc 71, Ex. E, will have no preclusive effect in subsequent proceedings outside the prison context involving different procedural and evidentiary standards. <u>See</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 869 (2d Cir. 1995) (noting that given the procedural laxity involved, "[w]e think there is a substantial question as to whether, under New York law, collateral estoppel should ever apply to fact issues determined in a prison

(continued...)

Similarly, the fact that CDOC officials did not provide Mr. Gwinn with an attorney for the hearing did not violate his due process rights. Because prisoners do not "have a right to either retained or appointed counsel in disciplinary hearings," Wolff, 418 U.S. at 570, Mr. Gwinn was not entitled to an attorney here. See also Wallace v. Tilley, 41 F.3d 296, 301 (7th Cir. 1994) (observing that a prisoner "had no right to have counsel present at the disciplinary hearings").

More troubling is Mr. Gwinn's allegation that he did not receive an impartial hearing because the defendant Mr. Dorhman was a member of the Hearing Panel. An impartial decisionmaker is a fundamental requirement of due process that is "fully applicable" in the prison context. Wolff, 418 U.S. at 592 (Marshall, J., concurring); see also Malek v. Camp, 822 F.2d 812, 815-17 (8th Cir. 1987) (reversing district court's dismissal of prisoner's claim that the personal bias of the chairman of a disciplinary tribunal violated his due process rights when the chairman was involved in a separate proceeding as a nominal

---

[3](...continued)
disciplinary hearing"); Johnson v. Freeburn, 144 F.Supp.2d 817, 823-24 (E.D. Mich. 2001) (holding that prison disciplinary hearings are not afforded preclusive effect and observing that "defendants in criminal cases are cloaked with substantial procedural protections--including a prohibition on the use of hearsay statements by confidential informants--most of which are not applicable in a prison disciplinary proceeding"); see generally Matosantos Commercial Corp. v. Applebee's Int'l., Inc., 245 F.3d 1203, 1212 (10th Cir. 2001) (noting that "[c]ollateral estoppel is also not appropriate when a party in a subsequent suit faces a less demanding burden of proof than the burden of proof in the prior litigation").

defendant). That Mr. Dorhman was named as a defendant in this case prior to his appointment to the Hearing Panel charged with the responsibility of determining whether Mr. Gwinn should be classified as a sex offender raises at least the possibility that the Hearing Panel was not fair and impartial. See generally Wolff, 418 U.S. at 592 (Marshall, J., concurring) ("Due process is satisfied as long as no member of the disciplinary board has become involved in the investigation or presentation of the particular case or has any other form of personal involvement in the case."); Hicks v. City of Watonga, 942 F.2d 737, 748 (10th Cir. 1991) (concluding that the plaintiff could establish a due process claim by showing bias on the part of only one member of the tribunal but further concluding that only the allegedly biased member could be held liable for damages in a 42 U.S.C. § 1983 action).

Nevertheless, "because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 518 (10th Cir. 1998) (internal quotation marks omitted). "'The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness' of a later adversary hearing." Mangels v. Pena, 789 F.2d 836, 838 (10th Cir. 1986) (quoting Withrow v. Larkin, 421 U.S. 35, 55 (1975)). Instead, "[d]ue

process is violated only when 'the risk of unfairness is intolerably high' under the circumstances of a particular case." Id. (quoting Withrow, 421 U.S. at 58).

Accordingly, allegations of bias such as those directed against Mr. Dorhman by Mr. Gwinn shoud be decided on a case-by-case basis. See Redding v. Fairman, 717 F.2d 1105, 1112-13 (7th Cir. 1983) (rejecting categorical rule that "disciplinary committee members 'at least should not be defendants in pending lawsuits for damages instituted by the very persons over whom the committee sits in judgment'" and holding that the district court should "evaluate the circumstances involved in the lawsuits and determine whether disqualification is required," considering among other factors "the extent of the Committee members' personal involvement in [the] lawsuits") (quoting district court's ruling); see also Malek v. Camp, 822 F.2d 812, 815-17 (8th Cir. 1987) (adopting case-by-case approach to allegations of bias based on decisionmaker's being a defendant lawsuits filed by the prisoner).

Moreover, as the Eighth Circuit has noted, "the courts should be alert not to sustain routine or pro forma claims of disqualification." Malek, 822 F.2d at 817. Careful scrutiny of disqualification claims is grounded in legitimate considerations of prison administration. "From a practical standpoint, requiring each staff member who is the subject of a separate lawsuit to disqualify himself from sitting in judgment of that inmate would heavily tax the working capacity of

the prison staff." Redding, 717 F.2d at 1113. Because prisoners may file lawsuits naming multiple prison officials defendants, a per se disqualification rule could "vest too much control in a prisoner to determine the [hearing panel's] make-up." Id.

Here, adopting this case-by-case approach, our review of the record indicates that the magistrate judge properly considered the particular circumstances regarding Mr. Dorhman's involvement in this lawsuit and his participation in the July 20, 2000 hearing and properly concluded that Mr. Gwinn had not presented sufficient evidence of bias to withstand summary judgment. Mr. Gwinn's complaint alleges that Mr. Dorhman was a mental health therapist at the Fremont Correctional Facility and that, in 1998, Mr. Dorhman looked at Mr. Gwinn's file, was aware that Mr. Gwinn had never been convicted of a sexual offense, and "told [Mr. Gwinn] he was a sex offender." Rec. doc. 3, at 5 (Complaint, filed Feb. 17, 1999). That alleged statement, however, is undisputedly true in an important sense: at that time, Mr. Gwinn had already been classified as a sex offender by CDOC officials and had been required to participate in treatment programs. CDOC records indicated that at one point, Mr. Gwinn had even admitted to committing a sexual assault, though he later retracted that admission. Standing alone, the fact that Mr. Dohrman may have told Mr. Gwinn that he was a sex offender in 1998, does not indicate that he was incapable

-19-

of fairly weighing the evidence presented at the July 2000 hearing and determining whether Mr. Gwinn had actually committed the alleged assault. See Mangels, 789 F.2d at 837 (observing that an administrative adjudicator's mere exposure to evidence presented in nonadversary investigative procedures is insufficient" to establish bias).

Moreover, as the magistrate judge observed, there is evidence that Mr. Dorhman took additional measures to protect Mr. Gwinn's due process rights. After learning of Mr. Gwinn's assertion that his bi-polar disorder would not allow him to contest the evidence against him in person, he advised Mr. Gwinn that he would be allowed to choose an inmate representative. See Rec. doc. 71, Ex. D.

In summary, we discern no error in the district court's grant of summary judgment to the defendant CDOC officials on Mr. Gwinn's procedural due process claim arising out of his classification as a sex offender at the July 20, 2000 hearing. Mr. Gwinn was afforded notice of the evidence against him and an opportunity to present evidence in his own behalf, and he received a written decision from the Hearing Committee. Because his assertions of bias are not supported by the record, Mr. Gwinn received the procedural protections required by the Due Process Clause.

2. Registration as a Sex Offender upon Release from Prison

Mr. Gwinn also challenges his classification as a sexual offender outside the prison walls. He alleges that "[i]n 1995, [he] was forced to register with the Denver Police Department as a sex offender as a condition of parole, though his conviction . . . was for simple robbery." Rec. doc. 47, at 3 (Response to Defendants' Mot. for Summ. J., filed Jan. 14, 2000). He adds that upon his release from any subsequent incarceration, he will be "forced to live in society labeled and stigmatized as a sex offender though he has never been convicted in a court of law for any sexual offenses," id. at 3-4, and that he has been denied employment and admission into substance abuse programs because of the registration requirements, Rec. doc. 3, claim I, section D (Complaint, filed Feb, 17, 1999). Mr. Gwinn named his former parole officer as a defendant on this due process claim but did not name the Parole Board or any of its members.

The magistrate judge concluded that this due process claim was foreclosed by Chambers:

> Under Chambers, plaintiff does not have a liberty interest in not being classified by the Parole Board as a sex offender, absent the denial of something of value to him by the State as a result of that classification. Here, plaintiff alleges that because of the Parole Board's classification of him as a sex offender, he was required to register as a sex offender with community law enforcement agencies, and as a result, potential employers refused to hire him. Plaintiff has not demonstrated that he was denied something of value by the State as a result of the sex

-21-

offender classification. Thus, defendant Fisher's actions in enforcing that condition of his parole did not deprive plaintiff of a constitutionally-protected liberty interest.

Rec. doc. 77, at 20 (Report and Recommendation, filed Sept. 6, 2000).

In our view, the magistrate judge misread <u>Chambers</u> and characterized Mr. Gwinn's liberty interest too narrowly. <u>Chambers</u> concerns the classification of an inmate inside the prison walls. <u>See</u> <u>Chambers</u>, 205 F.3d at 1242 (noting that "[f]inding [a due process] violation in the prison setting is particularly daunting"). The case does not address the standards for determining whether a liberty interest is implicated when an inmate who has not been convicted of a sex offense is classified as a sex offender when he is released from prison. <u>Chambers</u> also does not address the particular procedural protections to which a former inmate may be entitled before he is so classified. As the Supreme Court has noted, the procedural requirements for hearings conducted inside a prison are often quite different than those conducted elsewhere. <u>See</u> <u>Wolff</u>, 418 U.S. at 560 ("[I]t is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison.").

Although <u>Chambers</u> does not address the circumstances presented by Mr. Gwinn's outside-the-prison walls due process claim, several other decisions are

-22-

pertinent. In <u>United States v. Bartsma</u>, 198 F.3d 1191, 1199-1200 (10th Cir. 1999), we reviewed a defendant's challenge to the district court's imposition of a special condition of supervised release requiring the defendant to register as a sex offender in any state in which he resided after his release from prison. In the case at hand, the defendant had been convicted only for possession of a firearm after conviction of a felony, but he had previously been convicted of rape and child molestation. We held that the defendant was entitled to "reasonable presentence notice . . . that a special condition of supervised release requiring him to register as a sex offender was a possibility." <u>Id.</u> at 1200.

In support of that holding, we reasoned that "[t]he special condition here <u>implicated a liberty interest</u>, and there was a lack of any obvious nexus between the condition and the crime of conviction. Fundamental fairness requires notice–either actual or constructive–under these circumstances." <u>Id.</u> at n.7 (emphasis added). Significantly, we did not suggest that the defendant was required to show that the government had deprived him of employment opportunities or anything else of value in order for a liberty interest to be implicated. The registration requirement was sufficient in itself to implicate such an interest.

This conclusion is supported by decisions of other courts. In <u>Doe v. Department of Public Safety</u>, 271 F.3d 38, 47-59 (2d Cir. 2001), <u>rev'd on other</u>

grounds, 538 U.S. 1 (2003), the Second Circuit held that the stigma of being listed on a sex offender registry that contained false information, combined with the "extensive and onerous" registration duties imposed by Connecticut's sex offender statute were sufficient to implicate a liberty interest.[4]  See also Smith v. Doe, 123 S. Ct. 1140, 1157 (Stevens, J., concurring) ("The registration and reporting duties imposed on convicted sex offenders are comparable to the duties imposed on other convicted criminals during periods of supervised release or parole.  And there can be no doubt that the widespread public access to this personal and constantly updated information has a severe stigmatizing effect.  In

---

[4]  In support of its conclusion that the alleged injury arising out of the listing on the sexual offender registry was distinguishable from injuries protected by state defamation law, the Second Circuit reasoned:

> The imposition on a person of a new set of legal duties that, if disregarded, subject him or her to felony prosecution, constitutes a change of that person's status under state law. Such action is quintessentially governmental in nature.  Moreover, the presence of such an alteration of the registrant's legal rights and duties serves the federalism-based function of the plus factor: to ensure that the plaintiff cannot convert a state-law defamation claim into a § 1983 action because of the mere fortuity that he or she is suing a state defendant. The injury that the plaintiff alleges in this case-stigma plus an alteration in his or her state-law duties and status-could not have been inflicted by a private person in a position analogous to that of the state. Only a defendant employing his or her power as a state official  could impose and enforce the duties inherent in Connecticut's sexual offender registry law and then publish the information obtained by those state-imposed duties.

Doe, 271 F.3d at 57 (citations and internal quotation marks omitted).

my judgment, these statutes unquestionably affect a constitutionally protected interest in liberty.") (internal quotation marks and citations omitted).  Similarly, in Fullmer v. Michigan Dep't of State Police, 207 F. Supp. 2d 650, 659-661 (E.D. Mich. 2002), the court concluded that the stigma of being falsely labeled on the state's sexual offender registry, combined with the "obligations of registration and the attendant penalties for non-compliance" were sufficient to implicate a liberty interest.  But cf. Cutshall v. Sundquist, 193 F.3d 466, 479-82 (6th Cir. 1999) (holding that the Tennessee sex offender registration statute "does not implicate a constitutionally protected liberty or property interest in employment"); Russell v. Gregoire, 124 F.3d 1079, 1083 (9th Cir.  1997) (rejecting a claim that the Washington sex offender registration statute implicated a liberty interest).[5]

In light of our holding in Bartsma and these other decisions adopting a similar approach, we conclude that Mr. Gwinn has sufficiently alleged that his classification as a sex offender outside the prison walls implicated a liberty interest.  In particular, Mr. Gwinn has alleged that  (1) the government made a false statement about him-that he was a sexual offender-that was sufficiently

_____

[5]  However, as the Second Circuit noted in Doe, "these courts have not necessarily disagreed with the contention that the ongoing legal obligations of sex offender registrants constitute a "plus" factor [sufficient to implicate a liberty interest].  Neither the Sixth Circuit in Cutshall nor the Ninth Circuit in Russell was presented with such an argument. Instead, the plaintiff in each of those cases claimed that the "plus factor consisted of the state's intrusion on his or her right to privacy."  Doe, 271 F.3d at 58 (explaining Cutshall and Russell).

derogatory to injure his reputation, and that (2) he experienced a governmentally imposed burden that "significantly altered [his] . . . status as a matter of state law," in that he was required to register as a sex offender. See Paul, 424 U.S. at 710-11.[6] These allegations are sufficient to meet the applicable "stigma-plus" standard.

Unfortunately, the record before us is insufficient to evaluate these allegations. In particular, aside from the allegations of Mr. Gwinn's complaint, the record contains no information as to whether Mr. Gwinn was required to register as a sexual offender, what provisions of Colorado law were invoked as justification for such registration, and which of the named defendants, if any, were responsible for this registration.[7] Moreover, there is no information

---

[6] The Supreme Court's recent decision in Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1 (2003) does not foreclose this due process claim. There, the Court held the Connecticut sex offender registration statute did not violate the procedural due process rights of individuals who had already been convicted of sexual offenses because "the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." Id. at 9 (emphasis added). Here, Mr. Gwinn alleges that he had no such opportunity to challenge his classification as a sex offender upon his release from incarceration.

[7] Colorado has enacted statutes requiring the registration and treatment of sex offenders. See People v. Stead, 66 P.3d 117 (Colo. Ct. App. 2002) (discussing registration provisions); People v. Apodaca, 58 P.3d 1126 (Colo. Ct. App. 2002) (discussing treatment provisions). These statutes have been amended on several occasions, and it is not clear which of them, if any have been applied by the defendants to Mr. Gwinn. We leave that determination for the district court on remand.

regarding what procedural protections, if any, were afforded to Mr. Gwinn before he was required to register as a sexual offender. As the magistrate judge noted, the defendants did not address these matters in their motion for summary judgment, and Mr. Gwinn himself has not provided evidence sufficient to resolve these allegations. Accordingly, we conclude that the district court's grant of summary judgment on Mr. Gwinn's due process claim regarding his classification as a sexual offender outside the prison walls must be vacated and remanded for further proceedings.

On remand, the district court should determine: (1) whether Mr. Gwinn was required to register as a sexual offender upon his release from prison; (2) if Mr. Gwinn was required to register, what provisions of Colorado law were invoked to justify the registration; (3) what specific obligations any such registration imposed upon Mr. Gwinn. The district court should then determine which of these defendants, if any, were responsible for this registration.

If any of the defendants were so responsible, the district court should then determine whether the registration requirements, if any, were sufficient to "significantly alter[] [his] status as a matter of state law," see Paul, 424 U.S. at 710-11, such that they implicated a liberty interest. If such a liberty interest was implicated, the district court should then determine whether Mr. Gwinn was afforded the procedural protections required by the Due Process Clause in these

circumstances.[8]

## B. Fifth Amendment Compulsion Claim

Mr. Gwinn contends that CDOC officials violated his Fifth Amendment rights by punishing him for refusing to comply with one of the requirements of the treatment program for sex offenders—that he admit that he committed a sex offense. He contends that because he refused to participate in the treatment program, he was ineligible to earn good time credits at the higher rate available to participating prisoners. The denial of this benefit, Mr. Gwinn maintains, constituted impermissible compulsion of incriminating testimony.

Mr. Gwinn's argument is controlled by the Supreme Court's decision in McKune v. Lile, 536 U.S. 24 (2002), and this circuit's subsequent interpretation of that decision in Searcy v. Simmons, 299 F.3d 1220 (10th Cir. 2002). In McKune, a divided Supreme Court reversed a decision of this court applying the Fifth Amendment's bar on compelling incriminating testimony. This court had concluded that a Kansas policy restricting an inmate's privileges and transferring him to a maximum security prison after he refused to disclose his sexual history

---

[8] We leave for the district court the determination, if necessary to the disposition of Mr. Gwinn's case, of what process is due to a person who has been released from prison and has never been convicted of a sex offense before that person may be properly required to register as a sex offender. As noted above, that question is not resolved by our decision in Chambers.

(as required by a sex offender treatment program) constituted impermissible compulsion. See McKune v Lile, 224 F.3d 1175 (10th Cir. 2000). Four justices concluded that the standard set forth in Sandin v. Conner, 515 U.S. 472 (1995), should control in determining whether the imposition of these consequences constituted impermissible compulsion: if the consequences constituted "atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life" then the program would violate the Fifth Amendment. McKune, 536 U.S. at 25 (citing Sandin, 515 U.S. at 484).

Applying that Sandin standard to the facts before it, the plurality concluded that the penalties imposed against the prisoner were significantly less than potential penalties other inmates faced in cases where the Supreme Court ruled that there was no Fifth Amendment violation. See McKune, 536 U.S. at 41-45. Accordingly, the plurality concluded that the Kansas program did not violate the plaintiff prisoner's Fifth Amendment right against self-incrimination. McKune, 536 U.S. at 48.

Because she disagreed with the plurality's application of Sandin's "atypical and significant hardship" standard, Justice O'Connor did not join in the plurality opinion in McKune. However, she did agree that the consequences of the plaintiff prisoner's refusal to incriminate himself were not "so great as to constitute compulsion for the purposes of the Fifth Amendment privilege against

-29-

self-incrimination." Id. at 49 (O'Connor, J., concurring). Thus, she concurred in the judgment.

As we noted in Searcy, "[b]ecause Justice O'Connor based her conclusion on the narrower ground that the [Department of Corrections'] policy was not compulsion under the Fifth Amendment, we view her concurrence as the holding of the Court in McKune." 299 F.3d at 1225; see Marks v. United States, 430 U.S. 188, 193 (1977) (stating that the holding of a fragmented Court "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds"). Accordingly, the question we must resolve is whether, under the standard applied by Justice O'Connor in her concurring opinion, consequences of Mr. Gwinn's refusal to participate in the treatment program for sexual offenders were "so great as to constitute compulsion," McKune, 536 U.S. at 49 (O'Connor, J., concurring), for purposes of the Fifth Amendment privilege against self-incrimination.

In this regard, we note that Mr. Gwinn's refusal to participate in the treatment program did result in an additional consequence not suffered by the plaintiff prisoner in McKune: the loss of opportunity to accrue good time credits at an increased rate. Thus, we must determine whether this additional adverse consequences is "serious enough to compel Mr. Gwinn to be a witness against himself." 536 U.S. at 50 (O'Connor, J., concurring).

-30-

This circuit's opinion in Searcy resolves that issue. There, we held that the withholding of good time credits to a Kansas prisoner who refused to participate in a treatment program did not constitute compulsion. We reasoned that the award of good time credits under the Kansas regulation was discretionary and that, as a result, "foreclosing [the plaintiff] from the mere opportunity to earn good time credits is not a new penalty but only the withholding of a benefit that the [Kansas Department of Corrections] is under no obligation to give." 299 F.3d at 1226. Thus, the plaintiff prisoner "was left with a choice: take advantage of a benefit that the [Department of Corrections] provided or turn down that benefit in order to avoid providing what he feared, perhaps legitimately, would be self-incriminating statements." Id. Such a choice did not constitute compulsion.

Searcy is applicable here. Like the Kansas Department of Corrections, the CDOC retains discretion in awarding good time credits. See Col. Rev. Stat. § 17-22.5-405(1) (stating that "[e]arned time, not to exceed ten days for each month of incarceration or parole, may be deducted from the inmate's sentence") (emphasis added); Duncan v. Gunter, 15 F.3d 989, 992 (10th Cir. 1994) (noting the discretionary language in the Colorado good time credit statute). Under Colorado law, parole decisions are similarly discretionary. See Thiret v. Kautzky, 792 P.2d 801, 805 (Colo. 1990). Thus, Mr. Gwinn, like Mr. Searcy, was faced with a choice between the opportunity to earn credits at the higher rate and retain

-31-

favorable parole status or declining that opportunity by refusing to participate in the treatment program and thereby avoiding the requirement that he admit to committing a sex offense. Accordingly, the pressure imposed upon Mr. Gwinn did not rise to a level where it is likely to compel a person to be a witness against himself. See Searcy, 299 F.3d 1227 (applying McKune, 536 U.S. at 49) (O'Connor, J., concurring).

To be sure, as Mr. Gwinn further observes, there is another difference between McKune and Searcy and the instant case: both of the defendants in those cases were convicted of sexual offenses while Mr. Gwinn was not. Mr. Gwinn contends that this fact establishes that the CDOC impermissibly sought to compel incriminating testimony.

We disagree with Mr. Gwinn's reading of those cases. Under Justice O'Connor's opinion in McKune and our decision in Searcy, the Fifth Amendment compulsion analysis focuses on the consequences imposed upon the inmate who refuses to participate in the sexual offender treatment program. See McKune, 536 U.S. at 49-50 (O'Connor, J., concurring) (noting that the court must ask "whether the pressure imposed in such situations rises to a level where it is likely to compel a person to be a witness against himself" and concluding that "I do not believe the consequences facing respondent in this case are serious enough to compel him to be a witness against himself") (internal quotation marks and alterations

-32-

omitted); Searcy, 299 F.3d at 1227 (examining the level of pressure imposed upon a prisoner who refused to admit that he was a sexual offender). Here, despite the fact that Mr. Gwinn has not been convicted of a sexual offense, the consequences of his failure to admit that he committed an assault are similar to the consequences imposed upon the prisoner in Searcy. Thus, although Mr. Gwinn's lack of a prior conviction for a sexual offense may be relevant to other constitutional claims–such as the due process claims we have discussed above– that fact does not affect the analysis of the Fifth Amendment compulsion claim.

Accordingly, we conclude that the district court properly granted summary judgment to the defendant CDOC officials on Mr. Gwinn's Fifth Amendment compulsion claim.[9]

---

[9] In supplemental briefing filed by his appellate counsel, Mr. Gwinn also contends that CDOC officials informed him that he was required to admit to the commission of a sex offense in order to receive "favorable parole board status." Aplt's Supp. Br., filed July 23, 2001, at 14. Mr. Gwinn then cites the Colorado Lifetime Supervision Act, Col. Rev. Stat. § 18-1.3-1001, et seq., and states that under that statute, sex offenders "must participate and progress" in [the CDOC's treatment program] in order to be considered a candidate for parole." Id. at 14 n.7.

Whether requiring a prisoner to admit to an offense in order to be eligible for parole constitutes compulsion in violation of the Fifth Amendment is a question not resolved by the Supreme Court's decision in McKune or our decision in Searcy. However, upon review of the record, we conclude that Mr. Gwinn did not raise this issue in the district court proceedings, and that, as a result, we need not address it here.

Mr. Gwinn did allege that CDOC officials told him that he must admit to committing a sex offense in order to receive "favorable parole board reports." Rec. doc. 1, section C, at 1 (Complaint filed Feb. 17, 1999). He also asserted

(continued...)

-33-

C.  Ex Post Facto, Eighth Amendment, First Amendment, and Equal Protection Claims

Mr. Gwinn's remaining claims do not require extended discussion.  He argues that the CDOC officials violated the Ex Post Facto Clause, because, in requiring him to participate in a treatment program for sexual offenders, these officials applied a law regarding the treatment of sexual offenders, Col. Rev. Stat. § 16-11.7-101 et seq., enacted in 1992—after the date on which Mr. Gwinn committed the alleged sexual assault.  In Chambers, we rejected this very challenge.  See 205 F.3d at 1242 (noting that "in rehabilitative matters, prison officials may consider any history established in the inmate's record which it may determine requires treatment" and that "because application of the [Sexual Offender Treatment Program] did not affect the legal consequences of [the

---

[9](...continued)
that CDOC officials wrote "unfavorable parole board reports" based on the alleged sexual assault of which he was not convicted.  Id. at 5.  However, he did not contend that prison officials applied the Lifetime Supervision Act to him or that his refusal to participate in the treatment program rendered him completely ineligible for parole.

To the extent that Mr. Gwinn merely alleges that his refusal to admit to the alleged sexual assault was considered as an unfavorable factor in reports to the parole board, we agree with the CDOC that such unfavorable reports do not constitute impermissible compulsion under McKune.  Cf. Ainsworth v. Stanley, 317 F.3d 1, 6 (1st Cir. 2002) ("conclud[ing] that the reduced likelihood of parole for refusing to participate in [a prison treatment program for sexual offenders] does not constitute a penalty sufficient to compel incriminating speech in violation of the Fifth Amendment").

plaintiff prisoner's] crime or increase his punishment, there is no ex post facto violation") (internal quotation marks omitted). Thus, the district court properly granted summary judgment to the defendant CDOC officials on Mr. Gwinn's ex post facto claim.[10]

Mr. Gwinn's Eighth Amendment claim–that the denial of good time credits and other privileges as a result of his failure to admit that he had committed a sexual assault–is also not supported by the applicable law. "[T]he Eighth Amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain . . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." Rhodes v. Chapman, 452 U.S. 337, 346-47, (quotation omitted). The conditions alleged by Mr. Gwinn do not rise to that level.

Mr. Gwinn's First Amendment claim is based upon CDOC officials alleged denial of grievances regarding his classification as a sex offender. According to Mr. Gwinn, in denying the grievances, CDOC officials told him that the classification was not grievable. Rec. doc. 3, at 3 (Complaint filed Feb. 17,

_____

[10] To the extent that Mr. Gwinn's ex post facto claim concerns the application of Colorado's sexual offender registration statutes upon Mr. Gwinn's release from prison, we do not consider it here. As noted above, the record is insufficient to determine whether Mr. Gwinn was required to register as a sexual offender outside the prison walls, and, if so, which provisions of Colorado law were applied to him. However, we do note that the Supreme Court and this court have rejected ex post facto challenges to such registration laws. See Smith v. Doe, 539 U.S. 84 (2003); Femedeer v. Haun, 227 F.3d 1244 (10th Cir. 2000).

1999). Standing alone, the allegation that CDOC officials denied Mr. Gwinn's grievances is insufficient to allege the violation of his First Amendment rights. Cf. Smith v. Maschner, 899 F.2d 940, 947 (10th Cir.1990) (noting that because a prisoner must ordinarily first file a grievance in order to ultimately gain access to courts, punishing him for actually filing grievances may state a First Amendment claim). Here, there is no indication that CDOC officials retaliated against him for filing the grievances. Moreover, CDOC officials did eventually provide Mr. Gwinn with an opportunity to challenge the classification at the July 20, 2000, hearing. As we observed in Chambers, until we issued that opinion, the right to contest such a classification was not clearly established. See 205 F.3d at 1244. Accordingly, the district court properly rejected Mr. Gwinn's First Amendment claim as well.

Finally, Mr. Gwinn argues that CDOC officials violated his Fourteenth Amendment equal protection rights because he was treated differently than other defendants convicted of robbery in that he was required to submit to a treatment program for sex offenders or lose his good time credits. As the district court noted, absent an allegation of a suspect classification, our review of prison officials' differing treatment of various inmates is quite deferential: in order to withstand an equal protection challenge, those classifications must be reasonably related to a legitimate penological purpose. See Templeman v. Gunter, 16 F.3d

-36-

367, 371 (10th Cir. 1994). Here, prison officials found that Mr. Gwinn, unlike other robbery defendants, had committed a sexual assault. Thus the requirement that he participate in a treatment program had a rational relationship to rehabilitative objectives. See id. ("Not only might the [Department of Corrections] classify inmates differently because of slight differences in their histories, but they also might classify inmates differently because some still seem to present more risk of future misconduct than others."); Martinez v. Flowers, 164 F.3d 1257, 1261 (10th Cir. 1998) (upholding classification of violent offenders); see generally Brown v. Zavaras, 63 F.3d 967, 971 (10th Cir. 1995) (applying the rational basis standard to the treatment of a prisoner and stating that "[w]hen the plaintiff is not a member of a protected class and does not assert a fundamental right, we determine only whether government classifications have a rational basis"). Accordingly, the district court also properly rejected Mr. Gwinn's Equal Protection Claim.

## III. CONCLUSION

For the reasons set forth above we therefore AFFRIM the district court's judgment in favor of the defendants on Mr. Gwinn's First, Fifth, and Eighth Amendment claims and on his Equal Protection and Ex Post Facto claims. As to Mr. Gwinn's Due Process claims, we affirm the district court's judgment in favor

of the defendants insofar as those claims concern Mr. Gwinn's classification as a sex offender while incarcerated. As to Mr. Gwinn's due process claim regarding his classification as a sex offender upon release from incarceration, we VACATE the district court's judgment in favor of the defendants and REMAND this case to the district court for further proceedings consistent with this opinion.