**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 6, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DARNELL LOVE PITTMAN, SR.,

    Petitioner - Appellant,

v.

CHRISTOPHER GOMEZ,

    Respondent - Appellee.

No. 21-1114
(D.C. No. 1:19-CV-02221-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT[*]**
_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

Darnell Pittman appeals the denial of his 28 U.S.C. § 2241 petition challenging

the loss of good time credit due to prison disciplinary proceedings. Exercising

jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we affirm.

**BACKGROUND**

During the events giving rise to this habeas petition, Pittman was an inmate at

the Administrative Maximum Facility of the United States Penitentiary in Florence,

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Colorado.  In 2018, prison officials served him with an incident report charging him with possession of a hazardous tool, a violation of prison rules. *See* 28 C.F.R. § 541.3(a)-108.  The hazardous tool at issue was a razor blade concealed in a macroeconomics textbook labeled "Property of Darnell Pittman" in black permanent marker.  Officer Megan Boze reported that she found the razor blade while searching Pittman's cell.  At the time of the search, prison officials had brought Pittman out of his cell for questioning regarding an unrelated investigation.  The Unit Disciplinary Committee (UDC) conducted a hearing at which Pittman denied the charge, stating: "This is false—bogus[.]  My property was mishandled, and I do not own the book that is referenced."  R. vol. 1 at 222.

The UDC referred the matter to a Disciplinary Hearing Officer (DHO) for further hearing.  Pittman requested a staff representative, Recreation Specialist James Dahlquist, to assist him before the DHO.  On his witness list, Pittman requested review of "[c]amera [f]ootage R&D."  *Id.* at 230.[1]  Pittman's witness list also included officers who found abandoned books in the unit containing Pittman's cell, including three books (other than the macroeconomics textbook) that an officer returned to Pittman around the time Officer Boze discovered the razor blade.  Pittman also gave a handwritten note to the UDC requesting "D-unit camera footage," and "R&D camera footage."  *Id.* at 236.  In subsequent correspondence, Pittman requested that Dahlquist "review[] certain camera footage."  *Id.* at 237.  Pittman later

---

[1] "R& D" refers to the Inmate Services Unit at the facility.

2

requested that Dahlquist "[o]btain access to review the ADX Security Surveillance Camera footage between July 6th–July 9th of 2018; [i]n relation to D-block Unit; C-block Unit, and the R&D Dep't." *Id.* at 238.

The DHO held a disciplinary hearing over two days. On the first hearing date, the DHO continued the proceedings to give Dahlquist more time to attempt to fulfill Pittman's requests. Meanwhile, between the first and second hearing dates, the DHO emailed Officer Boze, writing:

> Hello. You authored this incident report, correct? If so, can please clarify something for me? The inmate alleges there were three books which were sitting on the floor outside of his cell on the day he and his property were removed from the cell. He said you picked those three books up and "disappeared." Do you happen to remember if . . .any of that information is accurate? Also, if so, do you remember what those three books were and what you did with those books? Were they placed back in his property before the search where you found the razor blade? Was one of those books the [m]acroeconomics book?

*Id.* at 232. Officer Boze replied:

> Hello Ma'am,
>
> Yes Ma'am I did. The three books in the hallway belonged to the ADX library and Chapel[;] I placed those three books in the sallyport of the unit for those respective departments to collect. Inmate Pittman had other institution books in his cell which belonged to those departments as well[;] I added them to the first three. The [m]acroeconomics book which I discovered the razor blade concealed in the binder of was located inside of his cell underneath his legal materials, along with a few other personal books.

> I discovered several home-made greeting cards when I searched and inventoried his property; the cards had precise cuts made in the paper which could only be made with a very sharp cutting instrument. Inmate Pittman had made threats to harm himself that morning. The [m]acroeconomics book set off the metal detector, and I saw the razor blade inside of the book when we took his property to C-Unit to scan it through the x-ray machine as Inmate Pittman was placed on suicide watch.

> If you have any further questions[,] please feel free to contact me!

*Id.* Ultimately, Dahlquist did not obtain, and the DHO did not review, any surveillance camera footage.

The DHO resumed the hearing, at which she expressly considered the incident report, the email exchange, photographs of the macroeconomics textbook and razor blade, and a seven-page, handwritten document listing thirty-one "Defensive Case Points" that Pittman submitted, *id.* at 42–48. In that document, Pittman stated camera footage "would show that the so-called 'macroeconomics' book was not removed out of my property on July 6–7; because I did not own said book, nor was said book taken out of my cell." *Id.* at 45. He also stated the camera footage would show how officers handled the three other books they found outside of his cell. The DHO determined, by the greater weight of the evidence, that Pittman was guilty of the disciplinary violation and imposed a sanction including the loss of 31 days of good time credit.

4

Pittman then filed a § 2241 application in the District of Colorado challenging the disciplinary conviction.[2]  The parties consented to the exercise of jurisdiction by a magistrate judge, who denied the application without a hearing.  Pittman filed a notice of appeal in this court and a Fed. R. Civ. P. 59(e) motion in the district court. We abated the appeal until the district court addressed the Rule 59 motion.  When the district court resolved the Rule 59 motion, Pittman's notice of appeal ripened.  *See Breeden v. ABF Freight Sys., Inc.*, 115 F.3d 749, 752 (10th Cir. 1997).

## DISCUSSION[3]

"When reviewing the denial of a habeas petition under § 2241, we review the district court's legal conclusions de novo and accept its factual findings unless clearly erroneous."  *al-Marri v. Davis*, 714 F.3d 1183, 1186 (10th Cir. 2013). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Nonetheless, "[w]here a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive . . . an opportunity, when consistent with institutional safety and correctional goals, to call

---

[2] The record is unclear whether Pittman pursued any other administrative appeals, or if such appeals would have been available to him.  The government, though, in its preliminary response to Pittman's habeas application, indicated it would not raise the defense of exhaustion of administrative remedies.

[3] Because Pittman "is a federal prisoner proceeding under 28 U.S.C. § 2241, . . . his appeal is not governed by the Antiterrorism and Effective Death Penalty Act of 1996, and thus no certificate of appealability is required."  *Howard v. U.S. Bureau Of Prisons*, 487 F.3d 808, 810 n.1 (10th Cir. 2007) (internal citation omitted).

witnesses and present documentary evidence in his defense." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). "In addition, the decision must be supported by some evidence." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005) (internal citation omitted).

Determining whether prison disciplinary proceedings satisfy the "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56. "The decision can be upheld even if the evidence supporting the decision is meager." *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (internal quotation marks omitted).

We have no trouble concluding "some evidence" supports the imposition of discipline here. Prison officials charged Pittman with possession of contraband—a razor blade. Evidence supporting that charge included the incident report from Officer Boze, who found the razor blade in Pittman's cell hidden in a textbook with Pittman's name on it, as well as photographs of the textbook and razor blade. Pittman's defense alluded to various scenarios in which Officer Boze (or other prison officials) might have planted the razor, mixed up the textbook found inside his cell with other books found outside his cell, or otherwise mishandled his property in some way, but the DHO was not obligated to credit these conjectures over Officer Boze's account.

Pittman presents two challenges to the disciplinary hearing proceedings. First, he argues it was unreasonable for the DHO to render a decision without reviewing the video footage he requested. Second, he argues the DHO was not impartial because of her email exchange with Officer Boze before the hearing.

We reject the first argument because, in substance, Pittman's various requests to the DHO to review video evidence were so broad and wide ranging as to conflict with institutional safety and correctional goals. The DHO attested that "[Pittman's] requests would have required [her] to review three calendar days of video from numerous locations in the ADX," such that the requested review "would have taken so much time that it would have prevented [her] from fulfilling [her] duties as a DHO in other cases." R. vol. 1 at 429–30. To this end, Pittman's reliance on *Howard*— where we held a DHO violated an inmate's due process rights by denying his request to review videotape from a single, identified camera of a discrete incident (a prison fight), 487 F.3d at 813–14—is misplaced.

Pittman criticizes the district court for crediting this aspect of the DHO's attestation, noting she made it more than two years after the disciplinary hearing and arguing that "[t]he failure to review even some of the video indicates the DHO had no intention of viewing any of it, which demonstrates lack of good faith and lack of impartiality." Aplt. Opening Br. at 16 n.6. But these criticisms are, at most, an invitation to reweigh the evidence before the district court, which we cannot do when reviewing for clear error. *See Anderson v. City of Bessemer City*, 470 U.S. 564,

7

573–74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."). And, while Pittman is correct about the timing of the attestation—the DHO did *supplement* her account of Pittman's video request in her second declaration the government submitted in the § 2241 proceedings—he points to no inconsistencies between this account and any of her earlier statements.

We also reject Pittman's second argument—that the DHO's pre-hearing email communications with Officer Boze evidenced improper bias. Although "[a]n impartial decisionmaker is a fundamental requirement of due process that is fully applicable in the prison context," *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (internal quotation marks omitted), "because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated," *id.* Pittman offers no basis to conclude the neutrally phrased investigative questions the DHO posed to Officer Boze over email evidence improper bias. Although such ex parte communications are improper on the part of judges in criminal trials, *see United States v. Carter*, 973 F.2d 1509, 1515 (10th Cir. 1992) (concluding "Constitutional error occurred" when trial judge answered juror questions outside the presence of defendant and counsel), these same constraints do not apply in prison disciplinary proceedings, *see Wolff*, 418 U.S. at 556.

8

Pittman's argument that the emailed questions were improper because they "should have been asked in the hearing itself, with Pittman present for them and able to cross-examine Officer Boze on her answers," Aplt. Opening Br. at 28, is particularly misplaced in the prison disciplinary hearing context where, unlike in criminal trials, the accused has no inherent due process right to confront and cross-examine adverse witnesses. *See Howard*, 487 F.3d at 812–13. Pittman therefore did not set forth a "substantial countervailing reason" to overcome the presumption of honesty and integrity on the part of the DHO and so did not establish a due process violation in his disciplinary proceedings. *See Gwinn*, 354 F.3d at 1220.

## CONCLUSION

We affirm the judgment of the district court.

Entered for the Court

Jerome A. Holmes
Circuit Judge