(139 P.3d 781)
No. 95,482

LEO F. SCHUYLER, *Appellant,* v. RAYMOND "RAY" N. ROBERTS, JR., *Appellee.*

Opinion filed August 4, 2006.

*Leo F. Schuyler*, appellant pro se.

*Julie St. Peter*, of Kansas Department of Corrections, of El Dorado, for appellee.

Before HILL, P.J., GREENE, J., and BRAZIL, S.J.

HILL, J.: Leo F. Schuyler, an inmate at the El Dorado Correctional Facility (EDCF), sought habeas corpus relief from the district court when prison officials classified him as a sex offender. Schuyler was so classified because he was once charged with aggravated sexual battery, a charge that was later dismissed by the State. The district court summarily denied Schuyler's petition ruling that this was a matter of internal prison management and was therefore best left to "the professional staff."

Further inquiry is needed here. Employing a "stigma plus" standard, as adopted by the Tenth Circuit Court of Appeals, we first conclude that the sex offender classification makes a statement about Schuyler that is sufficiently derogatory to injure his reputation; that the statement is capable of being proved false; and that Schuyler asserts it is false. That satisfies the "stigma" portion of the analysis. But for the "plus" step of the Tenth Circuit standard, we think the court should have inquired whether the increased responsibilities and restrictions imposed upon him by this classification created a burden on Schuyler that significantly altered his status, especially when compared with an inmate not classified as a sex offender. Accordingly, we reverse and remand for further proceedings.

## Facts and Prior Proceedings

In 1991, Schuyler was charged with one count of aggravated sexual battery and one count of aggravated assault. The aggravated sexual battery charge claimed that Schuyler applied force to another person with the intent to arouse or satisfy his or another's

sexual desires. Schuyler waived his preliminary hearing and was arraigned. Schuyler pled guilty to the aggravated assault charge, and the State dismissed the aggravated sexual battery charge. Schuyler received a prison sanction.

On September 23, 2003, Warden Raymond "Ray" Roberts, Jr., submitted an override request for Schuyler to be managed as a sex offender. The reason for this request was stated as follows: "1991 Agg. Assault offense was sexually motivated; was charged with Rape." This override request was granted by a review panel on October 28, 2003.

Schuyler filed a grievance and then followed all the administrative procedures necessary to perfect this appeal. Schuyler's claim was denied at every level of the process.

Schuyler filed a petition for writ of habeas corpus under K.S.A. 60-1501 in April 2005. His habeas corpus petition was summarily reviewed by the district court, which stated:

"This is a matter of the prison internal management process and is best left to prison professional staff. The Court sees no constitutional issues in prison classification matters such as the one in this case where an internal management policy was in place and used in the classification process. Petitioner has failed to state a claim upon which relief can be granted and his petition is hereby denied."

The court dismissed his petition without a hearing.

### Our Standard of Review

Our standard of review is reiterated in *Foy v. Taylor*, 26 Kan. App. 2d 222, 223, 985 P.2d 1172, *rev. denied* 268 Kan. 886 (1999), where the court stated:

"Upon review of a district court's order dismissing a petition for failure to state a claim upon which relief can be granted, appellate courts are required to accept the facts alleged by the plaintiff as true. The court must determine whether the alleged facts and all their inferences state a claim, not only on the theories which the plaintiff espouses, but on any possible theory. [Citation omitted.]"

Schuyler alleges a denial of due process. "The issue of whether due process has been afforded is a question of law over which [appellate courts] have unlimited review. [Citation omitted.]" *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005).

We understand as well that " '[p]roceedings on a petition for writ of habeas corpus filed pursuant to K.S.A. 60-1501 are not subject to ordinary rules of civil procedure. To avoid summary dismissal of a K.S.A. 60-1501 petition, allegations must be made of shocking and intolerable conduct or continuing mistreatment of a constitutional stature.' [Citation omitted.]" *Bankes v. Simmons*, 265 Kan. 341, 349, 963 P.2d 412, *cert. denied* 525 U.S. 1060 (1998).

### Tenth Circuit Cases and Sex Offender Classification

A series of Tenth Circuit cases are instructive here. In *LeVoy v. Mills*, 788 F.2d 1437, 1440 (10th Cir. 1986), the court stated: "The Constitution does not, in and of itself, create any protected liberty interest in a particular confinement status. [Citation omitted.]" But in discussing a claim that a prisoner's due process rights were violated when the prisoner was labeled as a sex offender, the court in *Chambers v. Colorado Department of Corrections*, 205 F.3d 1237, 1242 (10th Cir. 2000), stated:

" 'The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property.' [Citation omitted.] Finding such a violation in the prison setting is particularly daunting. However, although an inmate's 'rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country.' [Citation omitted.]

"The Supreme Court has recognized a prisoner may be deprived of a liberty interest based on a severe change in the conditions of confinement. 'These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' [Citation omitted.] It has also found a liberty interest may be implicated when State laws and prison regulations grant inmates liberty interests to which due process protections apply. [Citation omitted.] 'In the first situation, the liberty interest exists apart from the state; in the second, the liberty interest is created by the state.' [Citation omitted.]"

This concept of liberty interests being created by the State has been refined in a later case. In *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004), the court stated:

" ' "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name.' *Jensen v. Redevelopment Agency of Sandy City,* 998 F.2d 1550, 1558 (10th Cir. 1993) (quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971)). Damage to one's reputation alone, however, is not enough to implicate due process protections. *See Paul v. Davis,* 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) (stating that 'reputation alone, apart from some more tangible interests such as employment, is neither "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause'); *McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981) ('[S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a [42 U.S.C.] § 1983 cause of action.').

"Instead, a plaintiff asserting that the government has violated the Due Process Clause by impugning his or her 'good name, reputation, honor, or integrity,' *Jensen,* 998 F.2d at 1558, must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that 'significantly altered [his or] her status as a matter of state law.' *Paul,* 424 U.S. at 710-11, 96 S. Ct. 1155. This is sometimes described as the 'stigma plus' standard."

It is this stigma plus standard that we now employ. We analyze the factors set forth under the stigma plus test separately.

## Our Analysis

First, it is clear that the State's classification of Schuyler as a sex offender is a statement that is derogatory enough to damage his reputation. "We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender." *Neal v. Shimoda,* 131 F.3d 818, 829 (9th Cir. 1997). It may also be possible for Schuyler to prove that he is not a sex offender. Schuyler apparently was labeled as a sex offender due to the fact that he was charged with but not convicted of aggravated sexual battery. If Schuyler would be able to present evidence regarding this prior charge, it is possible that he could show that he only committed the aggravated assault for which he was convicted and that the crime was not sexually motivated. Accordingly, Schuyler's claim complies with the "stigma" factor set forth in the *Gwinn* stigma plus standard. See *Gwinn,* 354 F.3d at 1216.

In order to understand the "plus" analysis, it is important to review the policies and procedures followed by the prison officials. Kansas Department of Corrections Internal Management Policy and Procedure (IMPP) 11-115 provides that inmates can be classified as sex offenders based on their prior convictions or their custodial behavior. Under IMPP 11-115, in order to find that Schuyler was a sex offender based on his aggravated assault conviction, the review panel had to have found that Schuyler was

"[a]n offender whose crime of conviction is a sex crime as identified by an state or federal statute, an offender with a prior conviction or juvenile adjudication of a sex crime, or a person who has ever been convicted of a crime that was sexually motivated. 'Sexually motivated' means that one of the purposes for which the offender committed the crimes was for the purpose of the offender's sexual gratification. The sexual motivation of the offense may be determined through either a judicial finding made at the time of sentencing or by information regarding the offense provided to the Kansas Department of Corrections."

It appears that the district court should have at least held a hearing to determine to what extent Schuyler is burdened by the sex offender label. Schuyler points to several requirements and restrictions that govern sex offenders under IMPP 11-115 as proof that the sex offender label imposed a burden that significantly altered his status. For example, IMPP 11-115(I)(A)(4) requires that sex offender treatment be placed on a sex offender's inmate program plan. A sex offender must also submit to sex offender treatment after being released from prison. IMPP 11-115(I)(B)(1). The sex offender must pay the costs of the sex offender treatment after being released from prison, unless the sex offender can show he or she is indigent. IMPP 11-115(IV)(B). A sex offender may also have limited contact with minors. IMPP 11-115(VI). A sex offender is also subject to polygraph testing, both inside prison and after he or she is released. IMPP 11-115(VIII). A sex offender is also prohibited from viewing sexually explicit material. IMPP 11-115(IX). Schuyler also claims that his classification as a sex offender would also cause him to be removed from his work release status because he would be moved to another facility to attend the sex offender treatment program. Schuyler has not provided any citation in sup-

port of this claim. Under our standard of review, we must accept this allegation as true.

The question left unanswered is how the responsibilities and restrictions listed above compare with those of an inmate who is not classified as a sex offender. This comparison is important in determining whether Schuyler had a liberty interest in not being classified as a sex offender. In *Bankes*, 265 Kan. at 351, while discussing whether an inmate's Fifth Amendment right against self-incrimination was violated by a sex offender treatment program that required the inmate to admit guilt, the court stated:

"The housing assignment given to an inmate, his or her custody classification, granting of parole, spending limitations at a canteen, regulation of visiting hours, withholding of good time awards, and regulation of other daily activities which are not atypical and do not pose a significant hardship within a prison, do not involve a liberty interest or violate the defendant's Fifth Amendment right by compelling him to incriminate himself and participate in SATP. [Citations omitted.]"

*Bankes* shows that just because an inmate is treated differently due to his or her classification as a sex offender, it does not mean that these burdens rise to the level of creating a liberty interest. It should also be noted that Schuyler might not have the restrictions and requirements usually imposed on sex offenders after leaving prison. IMPP 11-115(I)(C)(1) allows a sex offender to submit an override request asking that he not be managed as a sex offender while in prison or after he is released from prison. Since Schuyler is currently confined in prison, the impact on Schuyler after leaving prison is speculative at this point. It should also be noted that Schuyler claims that he will be required to register as a sex offender after leaving prison. However, no authority has been provided to support this allegation.

The district court erred in finding that Schuyler did not state a claim upon which relief could be granted. The overwhelming authority shows that an inmate that has not been convicted of a sex offense may have a liberty interest that is entitled to due process protections in not being classified as a sex offender if the stigma plus standard is shown.

The State claims that the stigma plus standard is incorrect for reviewing a due process violation. The State claims that the appropriate standard can be found in *Turner v. Safley*, 482 U.S. 78, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987). In *Turner*, inmates challenged prison regulations that limited mail access and marriage. In making a determination regarding whether the regulations violated the inmates' constitutional rights, the Court stated: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89.

The present case is distinguishable from *Turner* in that Schuyler is not directly attacking the constitutionality of IMPP 11-115. Instead, Schuyler is only claiming that he was denied due process by being classified as a sex offender under the circumstances of this case. The fact that the State was following the mandate of IMPP 11-115 does not change Schuyler's claim. Accordingly, the reasoning in *Turner* is not applicable here.

Thus, we reverse and remand to allow the district court the opportunity to hear evidence and determine whether Schuyler has shown that he has a liberty interest under the stigma plus standard. If the district court finds that Schuyler does have a liberty interest in not being classified as a sex offender, the court should then proceed to determine whether Schuyler received the process he was due.

Reversed and remanded with directions.