No. 95,482

Leo F. Schuyler, *Appellant*, v. Raymond "Ray" N. Roberts, Jr., *Appellee*.

(175 P.3d 259)

Opinion filed February 1, 2008.

*Leo F. Schuyler*, pro se, was on the brief for appellant.

*Charles J. Cavenee*, of Legal Services for Prisoners, Inc., of Lansing, argued the cause and was on the brief for appellant.

*Julie L. St. Peter*, of Kansas Department of Corrections, El Dorado Correctional Facility, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McAnany, J.: This case comes to us for review from the Court of Appeals. Leo F. Schuyler, a prisoner in the El Dorado Correctional Facility, petitioned the district court for a writ of habeas corpus, claiming he was classified as a sex offender by prison officials and placed in a sex offender treatment program without a hearing and without proof that he had ever been convicted of a sexually motivated crime. The district court dismissed the petition on the grounds that it failed to state a claim for which relief may

be granted. The Court of Appeals reversed the district court's dismissal.

In dismissing this action the district court was required to examine the allegations in the petition and the contents of any attachments. K.S.A. 60-1503. Its task was to determine if the petition alleged shocking and intolerable conduct or continuing mistreatment of a constitutional nature. *Bankes v. Simmons*, 265 Kan. 341, 349, 963 P.2d 412, *cert. denied* 525 U.S. 1060 (1998). On review, our task is to accept as true the allegations in Schuyler's petition in order to determine if the facts alleged and their reasonable inferences state a claim for relief. See *Smith v. State*, 264 Kan. 348, 353, 955 P.2d 1293 (1998). With those standards in mind, we consider the factual claims in Schuyler's petition, the facts contained in the petition's attachments, and any reasonable inferences which arise from them.

*Fact Claims*

On October 29, 1991, Schuyler was charged with aggravated sexual battery and aggravated assault. He pled guilty to aggravated assault, and the State dismissed the aggravated sexual battery charge. The record is silent as to whether Schuyler's plea and the State's dismissal of the remaining count were the product of a plea agreement. The court found Schuyler guilty of aggravated assault. On December 27, 1991, the district court sentenced Schuyler to prison for a term of 2 to 5 years.

Schuyler was released from prison after serving his sentence for the aggravated assault conviction. He was later returned to prison to serve a 154-month sentence for aggravated battery and driving while a habitual violator. While serving this second sentence, his Program Classification Review of February 12, 2003, indicated that Schuyler was classified as a sex offender. This classification was made by Department of Corrections staff in Topeka. His review form stated: "Managed as a Sex Offender due to Other determination not an override." Warden Raymond N. Roberts, Jr., submitted an override request on September 23, 2003, but the override committee determined that Schuyler should be managed as a

sex offender based on the following: "1991 Agg. Assault offense was sexually motivated; was charged with Rape."

Schuyler claims the manner of his classification was contrary to Kansas Department of Corrections policies and procedures. He further claims his classification was made without benefit of due process of law guaranteed by the United States Constitution and the Kansas Constitution. According to Schuyler, he was never convicted of a sex offense, no court has made a finding that his aggravated assault conviction was sexually motivated, and he has never been accused of engaging in sexually motivated behavior while in prison.

Schuyler states that, having been placed in the KDOC sex offender treatment program, if he now refuses to participate he will be deprived of certain personal property, such as the use of a television, radio, and reading materials; and his visitation privileges and canteen purchases will be restricted. He states that since the sex offender program is not available at the El Dorado facility, he will have to be transferred to another prison resulting in the loss of his work-release job. He further alleges that upon release from prison he will be required to register as a sex offender, though he has never been convicted of a sexually motivated crime.

Following his classification as a sex offender Schuyler filed a grievance which provided him no relief. He exhausted his administrative remedies before bringing this habeas corpus action in the district court against Warden Roberts. In his petition he sought, among other things, a declaration from the court that his classification as a sex offender violated his due process rights and an order requiring the prison authorities to provide him with a hearing before classifying him as a sex offender. The district court provided a summary review of the petition and its attachments as required by K.S.A. 60-1503 before dismissing this action on the grounds that Schuyler failed to state a claim upon which relief could be granted.

Schuyler appealed to the Kansas Court of Appeals. The Court of Appeals reversed and remanded the case to the district court for further proceedings. *Schuyler v. Roberts*, 36 Kan. App. 2d 388, 139 P.3d 781 (2006). In doing so, the Court of Appeals adopted the "stigma plus" test used by the Tenth Circuit Court of Appeals

to determine whether a prisoner's classification as a sex offender implicated a protected liberty interest. The Court of Appeals determined that the stigma element of the test was met by Schuyler being labeled a sex offender. Upon remand, the district court was directed to conduct further proceedings to determine the extent to which Schulyer was burdened by the sex offender classification, the "plus" element of the test. Roberts' petition for review brought the matter before us.

### The "Stigma Plus" Test

The "stigma plus" test was described in *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004). Roberts argues that this "stigma plus" test adopted by the Court of Appeals does not apply. He asserts that the objective of the sex offender treatment program "is to provide an appropriate treatment, management and supervision scheme for individuals who have been convicted of sex offenses, have a history of sexually motivated behavior in a correctional setting, or whose crime was sexually motivated." According to Roberts, Schuyler's classification as a sex offender was used to determine the type of management and control he should receive while confined in prison. Thus, he argues, the courts should grant considerable deference to penal authorities in finding the appropriate balance between prison security and the rights of inmates.

The cases are legion that recognize the deference courts give penal authorities in the management and operation of our prison system. See *Meachum v. Fano*, 427 U.S. 215, 224, 49 L. Ed. 2d 451, 96 S. Ct. 2532 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 555, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974); *Foster v. Maynard*, 222 Kan. 506, 509, 565 P.2d 285 (1977); *Chambers v. Colorado Dept. of Corrections*, 205 F.3d 1237, 1242 (10th Cir. 2000). Nevertheless, and though they are confined to prison, inmates retain certain constitutionally protected liberty interests to which the right of due process applies. To the extent a liberty interest survives an inmate's loss of personal freedom, the essence of incarceration, that liberty interest is entitled to protection. See *Wolff v. McDonnell*, 418 U.S. at 557; *Chambers v. Colorado Dept. of Corrections*, 205 F.3d at 1242.

"Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.' [Citation omitted.] But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff*, 418 U.S. at 555.

A protected liberty interest may arise when prison authorities impose a restraint on a prisoner's already quite-limited freedom, and the restraint is atypical and a significant hardship on the inmate in relation to the ordinary incidents of prison life. See *Sandin v. Conner*, 515 U.S. 472, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995).

*Vitek v. Jones*, 445 U.S. 480, 63 L. Ed. 2d 552, 100 S. Ct. 1254 (1980), considered one such liberty interest of a prison inmate. *Vitek* presents a somewhat analogous situation to that of Schuyler. Schuyler alleges he was classified as a sex offender and ordered to treatment without a hearing. Vitek was declared to be mentally ill and transferred from the prison to a psychiatric hospital without a hearing. The Court in *Vitek* reasoned that "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." *Vitek*, 445 U.S. at 494. The Court noted:

"Appellants maintain that the transfer of a prisoner to a mental hospital is within the range of confinement justified by imposition of a prison sentence, at least after certification by a qualified person that a prisoner suffers from a mental disease or defect. We cannot agree. None of our decisions holds that conviction for a crime entitles a State not only to confine the convicted person but also to determine that he has a mental illness and to subject him involuntarily to institutional care in a mental hospital. Such consequences visited on the prisoner are qualitatively different from the punishment characteristically suffered by a person convicted of crime. . . . A criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections." 445 U.S. at 493-94.

The Court noted that "commitment to a mental hospital 'can engender adverse social consequences to the individual' and that

'[w]hether we label the phenomena "stigma" or choose to call it something else . . . we recognize that it can occur and that it can have a very significant impact on the individual.' [Citations omitted.]" *Vitek*, 445 U.S. at 492.

At issue here is the characterization of Schuyler as a sex offender and the consequences that flow from this characterization. It is clear that simply because a person has been defamed by the government by being mislabeled a sex offender does not implicate due process protections absent some more tangible interest. *Paul v. Davis*, 424 U.S. 693, 701, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976). In the present context the showing of such a "more tangible interest" as required by *Paul* was considered in *Gwinn*.

*Gwinn* presents several facts which are similar to the allegations now before us. Gwinn had been charged with robbery and sexual assault. He pled guilty to robbery, and the sexual assault charge was dismissed. Gwinn was informed that as a result of having been charged with sexual assault, he was being categorized as a sex offender and was required to complete a sex offender treatment program. He claimed, among other things, that the prison authorities violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to conduct an adequate hearing before classifying him as a sex offender. While the appellate court ultimately found that Gwinn had been afforded an adequate due process hearing on the issue, the court enunciated the applicable "stigma plus" test, by which

"a plaintiff asserting that the government has violated the Due Process Clause by impugning his or her 'good name, reputation, honor, or integrity,' [citation omitted], must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that 'significantly altered [his or] her status as a matter of state law.' *Paul*, 424 U.S. at 710-711, 96 S. Ct. 1155." *Gwinn*, 354 F.3d at 1216.

We conclude that Schuyler's classification as a sex offender calls for application of this "stigma plus" test to determine whether he has alleged facts in his petition which, if proven, establish that he has a liberty interest which was infringed without affording him

due process of law. Under the particular facts of this case, it would be improper to judge the adequacy of Schuyler's pleading from the perspective of the considerable deference courts grant to corrections authorities in the management of the prison, as expressed in *Turner v. Safley*, 482 U.S. 78, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987). Courts continue to defer to the expertise of corrections authorities in the difficult task of managing prison inmates. However, courts do not defer to prison authorities on the question of whether due process should be afforded an inmate before the prison authorities take action which abridges an inmate's constitutionally protected liberty interest.

As a final comment on this issue, we note that Roberts' reliance on *Hill v. Simmons*, 33 Kan. App. 2d 318, 101 P.3d 1286 (2004), is misplaced. Hill was classified as a sex offender after he engaged in inappropriate sexual behavior while in prison. As a result, he was not allowed to have sexually explicit materials in his possession while in prison. Hill sought relief pursuant to K.S.A. 60-1501, claiming his classification violated the Ex Post Facto Clause, his First Amendment rights, and his Fourteenth Amendment right to due process. The analysis of Hill's due process claim appears to have been skewed by the manner in which his pro se appeal was presented. As a consequence, the court in *Hill* was never called upon to consider whether the prisoner was entitled to a hearing before being classified as a sex offender.

Hill claimed a violation of his due process rights in two respects. First, he claimed the district court's summary dismissal of his petition without a hearing violated his due process rights. The Court of Appeals quickly disposed of this claim. Schuyler makes no such claim in the appeal before us.

The second aspect of Hill's due process claim related to Internal Management Policies and Procedures (IMPP) 11-115, the regulation regarding the management of sex offenders in prison. Hill presented two due process arguments relating to the application of IMPP 11-115 to him. First, he did not argue that he was denied a hearing; rather, he argued the unfairness of the consequence of being characterized as a sex offender, *i.e.*, the denial of his right to have pornographic material while in prison. The Court of Appeals

resolved this issue by concluding that imposing restrictions against such materials was within the wide discretion granted prison officials in managing prison operations. Finally, Hill argued that he could not be found to be a sex offender under IMPP 11-115 since K.S.A. 2003 Supp. 22-4902 defined a sex offender as one who had been convicted of a sexually violent crime and he had never been convicted of such a crime. Hill never claimed he had been denied a hearing on the issue of his classification as a sex offender. Accordingly, *Hill* simply does not apply.

### Application of the "Stigma Plus" Standard

Schuyler alleges that the prison authorities have characterized him as a sex offender and require his ongoing participation in a sex offender treatment program. He denies that he is a sex offender. He alleges that his failure to participate in the sex offender treatment program will result in the loss of certain property and privileges. He also alleges that he will be required to register as a sex offender when released from prison.

In order to determine whether these allegations set forth an actionable claim we must determine whether, if proven, they constitute either shocking and intolerable conduct or continuing mistreatment of a constitutional nature. *Foster v. Maynard*, 222 Kan. 506, 509, 565 P.2d 285 (1977). In making this determination we must look to the "stigma plus" test. If Schuyler's pleading satisfies both elements of this test, then to compel his treatment as a sex offender without affording him the benefit of any hearing to consider whether he is, in fact, a sex offender would infringe upon a liberty interest and thereby constitute continuing mistreatment of a constitutional nature.

To satisfy the "stigma" element of the test, (1) Schuyler must set forth allegations which, if true, demonstrate that the prison authorities have characterized him in a way which is sufficiently derogatory so as to injure his reputation, and this characterization is capable of being proven false; and (2) he must allege that the characterization is false. To satisfy the "plus" element of the test, Schuyler must allege that this mischaracterization has caused him to experience a governmentally imposed burden which has signif-

icantly altered his status as a matter of state law. *Paul*, 424 U.S. at 710-11; *Gwinn*, 354 F.3d at 1216.

The Court of Appeals determined that the State's classification of Schuyler as a sex offender under IMPP 11-115 met the stigma prong of the analysis because the classification is "derogatory enough to damage his reputation" and because "[i]t may also be possible for Schuyler to prove that he is not a sex offender." *Schuyler*, 36 Kan. App. 2d at 392. This conclusion is sound. As the court explained in *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997):

"We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender. . . . One need only look to the increasingly popular 'Megan's laws,' whereby states require sex offenders to register with law enforcement officials who are then authorized to release information about the sex offender to the public, to comprehend the stigmatizing consequences of being labeled a sex offender. The classification of an inmate as a sex offender is precisely the type of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' that the Supreme Court held created a protected liberty interest. [Citation omitted.]"

Further, Schuyler denies being a sex offender. Whether Schuyler is, in fact, a sex offender as defined by IMPP 11-115 is certainly a matter which can be proven. Thus, Schuyler's allegations in his petition satisfy the stigma element of the test.

With respect to the plus factor of the test, Schuyler makes allegations which, if proven, establish a mischaracterization which has caused him to experience a governmentally imposed burden which significantly alters his status as a matter of state law. According to Schuyler's petition and its attachments, Schuyler was classified as a sex offender in accordance with IMPP 11-115. Prisoners so classified must be placed in the sex offender treatment program. IMPP 11-115(I)(A)(4). Prisoners so classified must also submit to mandatory sex offender treatment after being released from prison. IMPP 11-115(I)(B)(1). Among other aspects of the treatment program, prisoners classified as sex offenders must submit to periodical polygraph testing, both while in prison and after release. IMPP 11-115(VIII). In addition, prisoners classified as sex offenders are permitted limited visitation with minors, are prohibited from viewing sexually explicit material (both while in prison

and after release), and have additional travel limitations placed on them after release. IMPP 11-115(VI), (VII), and (IX). Prisoners so classified must pay the costs of sex offender treatment after being released from prison unless they can demonstrate indigence. IMPP 11-115(IV)(B).

Schuyler clearly states a claim that the sex offender treatment program places significant burdens on him which are not imposed on prisoners who are not classified as sex offenders under IMPP 11-115. Viewing Schuyler's petition in the light most favoring him, and assuming the truth of his allegations for the purpose of determining whether he has stated an actionable claim, we conclude that Schuyler has stated a claim which, if proven true, warrants relief.

Roberts argued at length in his petition for review that the sex offender treatment program does not differ substantially from other prisoners' treatment. Whether this is true requires fact-finding beyond the examination of the pleading and its attachments as called for in K.S.A. 60-1503 and goes beyond our standard for appellate review. The resolution of this and other fact issues must await further proceedings in the district court. If the district court determines that Schuyler, in fact, satisfies the second element of the "stigma plus" test, then Schuyler is entitled to advance notice of his proposed classification as a sex offender, an opportunity to present evidence in his defense, and a written statement of the evidence relied upon by the panel in making its final determination. See *Wolff*, 418 U.S. at 559-67.

We conclude that the Court of Appeals properly reversed the district court's dismissal of Schuyler's petition and remanded the case to the district court for further proceedings.

Decision of the district court reversed; case remanded for further proceedings.

DAVIS and JOHNSON, JJ., not participating.

MCANANY, J., and LARSON, S.J., assigned.