NOT DESIGNATED FOR PUBLICATION

No. 115,489

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVEN PIERSEE,
*Appellant*,

v.

KARI BRUFFETT,
SECRETARY OF THE KANSAS DEPARTMENT ON AGING AND DISABILITY SERVICES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed February 10, 2017. Affirmed.

*Steven Piersee*, appellant pro se.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON and ARNOLD-BURGER, JJ.

*Per Curiam*: Steven Piersee has been confined to Larned State Hospital for treatment as a sexually violent predator since 2009. In June 2015, Piersee filed this petition for writ of habeas corpus. In it, he alleged that his constitutional and statutory rights to due process had been violated during his review and recommitment proceedings in 2010, 2011, 2012, 2013, and 2014, and he asked the court to grant him immediate release. The district court summarily dismissed the petition. Finding no error, we affirm.

1

Piersee was determined to be a sexually violent predator (SVP) and was committed to the Sexual Predator Treatment Program (SPTP) at Larned State Hospital in 2009. On June 30, 2015, Piersee filed a petition for writ of habeas corpus, under K.S.A. 2014 Supp. 60-1501, alleging that the district court failed to hold annual review hearings in 2010, 2011, 2012, 2013, and 2014 and that the district court failed to enter an order recommitting him to the SPTP in 2011, so his continued confinement is illegal. Piersee's allegations were not materially disputed by the State.

The district court summarily dismissed Piersee's petition, finding that it was untimely as to claims of error in the 2010, 2012, 2013, and 2014 proceedings. It further concluded that any error in the 2011 review proceeding was harmless so that Piersee was not entitled to relief. Finally, the district court determined that Piersee failed to establish that he had received ineffective assistance of counsel. Piersee now appeals.

ANALYSIS

*The district court did not err when it summarily dismissed Piersee's petition for a writ of habeas corpus.*

In his petition for habeas corpus, Piersee alleged that the proper procedures for continuing his confinement in the SPTP were not followed in 2010, 2011, 2012, 2013, or 2014; he contended that as a result, his continued confinement was unlawful and asked the district court to release him immediately. To state a claim for relief under K.S.A. 60-1501, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009). "[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as

2

those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then summary dismissal is proper. 289 Kan. at 648-49. An appellate court exercises unlimited review of a summary dismissal. 289 Kan. at 649.

Piersee alleges that in 2010, 2011, 2012, 2013, and 2014, the district court failed to hold hearings as part of his annual reviews as required by K.S.A. 2014 Supp. 59-29a08(a). It appears from the record that in 4 out of the 5 years, the district court independently reviewed Piersee's case without holding a formal hearing on the record, came to the conclusion that Piersee's condition had not so changed that a full evidentiary hearing was necessary, and entered an order recommitting him for another year. In 2011, however, it seems that Piersee's annual evaluation was completed but that the district court never entered an order continuing Piersee's commitment.

*Piersee has failed to establish manifest injustice to permit the untimely filing of his petition.*

In each of the years at issue Piersee received a mental health evaluation and was notified of his right to seek release over the objection of the Secretary of the Kansas Department of Aging and Disability Services (KDADS), though he consistently declined to do so. Additionally, with the exception of 2011, each year the district court conducted a timely in-chambers review of Piersee's progress in the program, found that he continued to be a sexually violent predator in need of commitment, and ordered his continued confinement. Piersee contends that these orders were invalid because: the district court did not consider whether to order an independent evaluation of Piersee's mental state; the district court did not appoint counsel to represent him; and, the district court did not hold a review hearing.

3

The process for conducting annual evaluations of individuals committed under the Sexually Violent Predator Act (SVPA) is outlined in K.S.A. 2014 Supp. 59-29a08. According to that statute, committed individuals are entitled to:

> "[A] current examination of the person's mental condition made once every year. The secretary shall provide the committed person with an annual written notice of the person's right to petition the court for release over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall also forward the annual report, as well as the annual notice and waiver form, to the court that committed the person . . . . The person may retain, or if the person is indigent and so requests the court may appoint a qualified professional person to examine such person, and such expert or professional person shall have access to all records concerning the person. The court that committed the person . . . shall then conduct an annual review of the status of the committed person's mental condition. The committed person shall have a right to have an attorney represent the person at the hearing but the person is not entitled to be present at the hearing." K.S.A. 2014 Supp. 59-29a08(a).

If it was not apparent from the statute, our Supreme Court has clarified that the district court's annual review of a committed individual's mental condition should occur during a hearing at which he or she has the right to be represented by court-appointed counsel. *In re Care & Treatment of Burch*, 296 Kan. 215, 220, 291 P.3d 78 (2012).

Contrary to Piersee's assertion, K.S.A. 2014 Supp. 59-29a08(a) does not require the district court to *sua sponte* order an independent evaluation of an SVP's mental condition. Instead, if an individual would like an independent evaluation, the onus is on the individual to request one. K.S.A. 2014 Supp. 59-29a08(a). Additionally, statutory changes in 2015 make it clear that the district court had no obligation to appoint counsel to represent Piersee at his annual review hearings absent a request by Piersee for representation. See K.S.A. 2015 Supp. 59-29a06(f). However, the district court clearly erred to the extent it failed to hold annual review hearings.

4

Unfortunately for Piersee, no relief is available because his petition for habeas corpus was not timely filed. This court discussed a similar fact pattern in *In re Care & Treatment of Howard*, No. 108,552, 2014 WL 113428 (Kan. App.) (unpublished opinion), *rev. denied* 301 Kan. 1046 (2014). Howard filed a motion in 2012 alleging that the district court failed to hold annual review hearings as required by the SVPA in 2005, 2006, and 2007, and seeking immediate release. This court began its analysis by noting that Howard failed to file direct appeals challenging his continued commitment after each year's annual review and that fact alone may have been grounds for dismissal of Howard's petition because a K.S.A. 60-1501 petition should not be used as a substitute for direct appeal. 2014 WL 113428, at *3. Without deciding whether Howard's petition should have been dismissed for that reason, the court went on to consider the timing requirements of K.S.A. 60-1501 and found that Howard failed to timely file his petition. 2014 WL 113428, at *3. This court reasoned:

> "In order for Howard's petition to be considered timely under K.S.A. 60-1501, he needed to file it within 1 year of the termination of appellate jurisdiction. But Howard did not appeal any of the annual reviews he received from 2005 to 2008; thus, appellate jurisdiction to review these proceedings expired when he failed to file a notice of appeal within 30 days from the determination that he remained a sexually violent predator. See K.S.A. 2012 Supp. 59-2401a(b); K.S.A. 2012 Supp. 60-2103." 2014 WL 113428, at *3.

Additionally, the *Howard* court made note that, while the time limit to file may be extended by a showing of manifest injustice, Howard did not allege manifest injustice at the district court level or attempt to explain on appeal why he waited until years after the alleged due process violations to seek judicial review. 2014 WL 113428, at *3-4.

Manifest injustice has been interpreted to mean obviously unfair or shocking to the conscience. *Vontress v. State*, 299 Kan. 607, 614, 325 P.3d 114 (2014). When determining whether a petitioner has suffered manifest injustice, courts should look at the totality of the circumstances, giving special consideration to whether: (1) there are

5

"persuasive reasons or circumstances" that prevented the petitioner from timely filing; and, (2) the petitioner's claim raises "substantial issues of law or fact deserving the district court's consideration." 299 Kan. at 616. Also, in the context of a 60-1507 motion, the context in which this test was developed, courts are to consider whether the movant "sets forth a colorable claim of actual innocence, *i.e.*, factual, not legal, innocence." 299 Kan. at 616. All of the factors considered under the totality of the circumstances need not be given equal weight, and no single factor is dispositive. 299 Kan. at 616. The movant bears the burden to demonstrate manifest injustice. 299 Kan. at 617.

Piersee, like Howard, failed to appeal the annual review proceedings he now challenges. Also like Howard, Piersee waited until after the statutory time for filing a K.S.A. 2014 Supp. 60-1501 petition ran—between 7 months and 4 years—before challenging the process that was used to continue his confinement. See K.S.A. 2012 Supp. 60-1501(c) (reducing the time limit to file a 60-1501 petition from 1 year to 30 days after an action is final). Thus, Piersee is eligible for relief only if he has shown that he suffered manifest injustice.

Although Piersee did not allege manifest injustice in his initial K.S.A. 2014 Supp. 60-1501 petition, he did raise the issue before the district court in a memorandum replying to the State's answer. There, he contended that the district court's failure to abide by the statutory requirements for conducting an annual review was shocking to the conscience and should result in a finding that manifest injustice occurred. Additionally, Piersee argued that it is unfair to apply statutes of limitations to him because he brought this action pro se, so he should not be expected to conform to the same standards as a person proceeding with an attorney who has greater knowledge and access to legal materials. Finally, he alleged that he was never served with notice of the district court's orders recommitting him so he was unaware when the time periods for bringing an action began to run.

6

So we next examine and apply the Vontress factors to determine if Piersee has established the existence of manifest injustice in order to save his petition from dismissal due to untimeliness.

*Vontress factor 1, justification for the delay, weighs against Piersee.*

The first *Vontress* factor requires this court to consider whether there are persuasive reasons justifying Piersee's delay in filing his K.S.A. 2014 Supp. 60-1501 petition. Piersee contends that the reason for the delay is that he was never given notice that the district court completed his annual reviews so that he did not know when the time was ripe to file an appeal or a petition for writ of habeas corpus. Appellate courts must accept as true the allegations in the petition to determine whether the facts alleged—and the reasonable inferences that can be drawn from them—state a claim for relief. See *Schuyler v. Roberts*, 285 Kan. 677, 679, 175 P.3d 259 (2008). If true, this lack of notice is disturbing. K.S.A. 2010 Supp. 60-258 requires the clerk of the district court in which a judgment or journal entry is filed to serve copies of the judgment on the attorneys of record within 3 days of filing; if a party is pro se, he or she should be served the notice directly. The district court found that copies of the annual reports were sent to Piersee's court-appointed attorney in 2012, 2013, and 2014 and therefore he had counsel in those years. Piersee does not claim, in his petition, that he lacked counsel in 2010, but he does not reveal whether counsel was retained or appointed. Because no annual review was conducted in 2011, clearly no notice would have been sent to Piersee.

While the district court's failure to notify him seems like a reasonable justification for some delay in Piersee's filing of a K.S.A. 2014 Supp. 60-1501 petition, it is only a justification for *some* delay. See *White v. State*, No. 114,284, 2016 WL 3202889, at *4 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* June 21, 2016. Just as there is for a criminal defendant awaiting word from his or her attorney on a direct appeal, there is an "outer limit" as to how long an SVP reasonably might wait to hear

7

from his or her lawyer or the district court about the status of an annual review. See 2016 WL 3202889, at \*4. Beyond that point, it seems reasonable to hold the SVP responsible for making an inquiry into the status of his or her own fate.

Because a commitment is only valid for a year, there must be a point at which each year becomes final for purposes of challenging confinement during that period. K.S.A. 59-29a01 declares that all time requirements referenced in the SVPA are directory rather than mandatory. But it is clear that persons confined under the act are entitled to yearly review and recommitment. See K.S.A. 2014 Supp. 59-29a08. However, because the SVPA is not clear on issues of timing and allows for some variance regarding the completion of recommitment proceedings, the date at which a year's commitment becomes final must be based on something other than a strict calendar year or number of days. "When statutes have been silent as to a period of time, courts have read in a 'reasonable time' into the statutes." *H.T.E., Inc. v. Tyler Technologies., Inc.*, 217 F. Supp. 2d 1255, 1261 n.9 (M.D. Fla. 2002). Accordingly, it would certainly be reasonable to conclude that a commitment order for 1 year would be final on the date that a new commitment order is issued for the ensuing year. It is that act that begins the recommitment for a new year, making whatever happened in the prior year essentially irrelevant.

But even before the annual commitment order is entered, a person confined as an SVP is put on notice that a recommitment order is imminent upon receipt of the written notice of the right to petition for release. So it would also be reasonable to deem the day the annual evaluation and notice of right or waiver are filed to be the cutoff for challenging the prior year's commitment. This ensures that a number of competing interests are honored. First, it clearly recognizes the need for finality. Second, it ensures an opportunity for a meaningful remedy. When review and recommitment occurs yearly, errors need to be addressed quickly for remedies to be meaningful. When, as here, an SVP challenges a commitment or lack thereof several years in the past, it is difficult to

8

fashion a remedy. Simply ordering a hearing at that point is meaningless because even if the court were to find that during a prior year the SVP's mental condition had improved such that transitional release was appropriate at that time, the fact that the SVP was recommitted to a lower level in the program in current year would control and the individual would remain in full confinement. This is because the SPTP allows for SVPs to progress and regress in the program—the direction of progress is not linear. See K.S.A. 2014 Supp. 59-29a08(f), (g). Even an SVP who is granted conditional release is subject to a return to full confinement if it is determined that changes in his or her mental condition warrant it. See K.S.A. 2014 Supp. 59-29a19.

Here, for instance, perhaps transitional release was appropriate for Piersee in 2011. Even if Piersee had been moved into transitional release at that time, if he regressed in 2012 he could have been removed from transitional release and placed back at a lower step in the program. Since Piersee was recommitted in 2012 without the need for a full hearing in accordance with K.S.A. 2014 Supp. 59-29a08(c) it is safe to assume that if Piersee had been placed in transitional release in 2011, he would have been withdrawn from transitional release in 2012. Therefore, a hearing on Piersee's 2011 status after his 2012 recommitment would not have benefited him because his current evaluation would trump it in terms of his placement within the program.

Moreover, Piersee signed the 2012 annual notice on October 1, 2012. Above his signature was the following clause, "If I desire to pursue further proceedings in this matter, I understand that I must initiate those separately from this response." It was filed with the district court on October 5, 2012. The district court signed an order continuing Piersee's commitment on November 6, 2012. At this point, absent an appeal of the 2011 annual review and recommitment, the 2011 commitment order became moot. Any remand for a hearing regarding the 2011 report would serve no purpose. He has received three subsequent annual reviews. Piersee maintained the ability to challenge his

9

continued confinement in subsequent annual reviews but failed to do so in a timely manner.

Based upon this analysis, all but the 2014 review would have taken place in excess of a year, and in some cases years, outside the outer limit of excusable delay so that this factor would clearly weigh against Piersee in the *Vontress* balancing analysis. The 2014 annual review took place in November 2014, just 7 months before Piersee filed this action, meaning it was still filed 5 months after the statute of limitations ran for filing an action under K.S.A. 2014 Supp. 60-1501. See K.S.A. 2014 Supp. 60-2103(a); K.S.A. 2012 Supp. 60-1501; *Grimmett v. S & W Auto Sales Co.*, 26 Kan. App. 2d 482, Syl. ¶ 1, 988 P.2d 755 (1999). Although that delay is not as significant as the others, we do not find it tips the scale in Piersee's favor.

> Vontress *factor 2, substantial issues of law or fact deserving the court's attention, weighs in Piersee's favor.*

The second factor is whether Piersee's claim raises substantial issues of law or fact deserving of the district court's attention. *Vontress*, 299 Kan. at 616. Piersee takes issue with the procedure that was used to recommit him each year for a number of years. He asserts that K.S.A. 2014 Supp. 59-29a08 requires an evaluation, appointment of counsel, and hearing annually, and failure to follow this statutory mandate is shocking, intolerable, and unconstitutional conduct. He reminds us that in *Kansas v. Hendricks*, 521 U.S. 346, 364-66, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997), the United States Supreme Court based its holding that the Kansas SVPA did not unconstitutionally impinge on committed individuals' rights in part on its finding that the act contained sufficient procedural safeguards to protect SVPs' rights. One such procedure is to limit "[t]he maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding [to] one year." 521 U.S. at 364. This limitation ensures that SVPs are not detained

10

indefinitely and that they are not subject to continued confinement when their mental conditions have changed so that they are no longer a danger to society. 521 U.S. at 364.

Whether the district court had an obligation to hold yearly annual review hearings and the protections that must be afforded at such proceedings is a question of law appropriate for the district court's consideration. Whether the district court failed to hold a hearing in Piersee's case is a factual question that, if resolved in his favor, could entitle him to some relief, although we take no position on the chances for success of such claim or what that relief might be.

Thus, this second factor weighs in favor of untimely consideration of Piersee's claim.

> Vontress *factor 3, evidence that continued confinement is no longer necessary, weighs against Piersee.*

The third *Vontress* factor that is considered in the context of K.S.A. 60-1507 motions, is whether the movant made a colorable claim of actual innocence. 299 Kan. at 616. While there is no direct corollary in the context of a K.S.A. 60-1501 petition raised by an SVP contesting his or her continued confinement, it may be reasonable to require some showing that there has been a change in the offender's mental or physical health such that continued confinement is no longer necessary. See 299 Kan. at 610 (noting Judge Leben's conclusion that the reason for considering this factor is that "a [K.S.A. 60-1507] motion's merits could establish manifest injustice in some circumstances, *e.g.*, an inmate showing actual innocence"). Piersee makes no such argument. Rather than arguing that he was entitled to release because proper proceedings during the challenged years would have revealed that he was no longer a danger and is entitled to release on that basis, he argued that he was entitled to immediate release simply because his procedural rights were violated. Thus, this third factor weighs against finding manifest injustice here.

11

Balancing these results, two out of the three *Vontress* factors clearly weigh against finding manifest injustice. Because Piersee has failed to adequately explain his long delay in challenging the district court's actions and because he makes no claim that release is necessary based on actual changes to his condition, he has failed to establish that manifest injustice results from a dismissal of his petition.

*We are unable to consider Piersee's claims regarding his right to procedural due process and equal protection.*

Piersee's second issue asks this court to address the merits of his K.S.A. 2014 Supp. 60-1501 petition to find that his statutory right to a timely annual evaluation and review hearing, as well as his right to procedural due process were violated in each of the challenged years. Having found that his petition is time barred it is impossible for this court to provide him relief on the merits.

In addition to contending that his procedural due process rights were violated, Piersee includes an equal protection argument in his brief on appeal. Piersee did not raise this issue before the district court. Issues not raised before the trial court cannot be raised for the first time on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011).

*Piersee's Claim for Ineffective Assistance of Counsel Was Untimely.*

Piersee's claim that counsel was ineffective assistance or nonexistent during the review proceeding is part of his overarching claim that the procedure was shocking, intolerable, and unconstitutional. We have already found his claims to be untimely.

But Piersee has also failed to make a sufficient claim to prevail on the merits. Of course, Piersee is entitled to effective assistance of counsel and he may challenge the

12

effectiveness of counsel through a collateral attack using K.S.A. 2014 Supp. 60-1501. See *In re Ontiberos*, 295 Kan. 10, 27, 287 P.3d 855 (2012). To prevail on a claim of ineffective assistance of counsel, one entitled to counsel must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the result would have been different absent the deficient performance. A reasonable probability means a probability sufficient to undermine confidence in the outcome. See 295 Kan. at 32.

So even if we were to consider his challenge and assume counsel was ineffective in *all* of the claimed years, Piersee is still required to show prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Piersee has failed to proffer any evidence, for any of the challenged years, that the result would have been different. This is fatal to his claim. Issues not briefed are deemed waived or abandoned. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

*The district court did not err when it failed to appoint counsel to assist Piersee with this habeas corpus action.*

Finally, Piersee argues that the district court erred when it failed to appoint counsel to represent him in this matter. At the same time, Piersee recognizes that the right to counsel in a K.S.A. 2014 Supp. 60-1501 proceeding only attaches after the district court has determined that the petition cannot be summarily dismissed. Because the district court summarily dismissed Piersee's petition, it was unnecessary for it to appoint counsel to represent him. See *Merryfield v. State*, 44 Kan. App. 2d 817, 826, 241 P.3d 573 (2010).

Affirmed.

13

* * *

ATCHESON, J., concurring:  I concur in the result affirming the dismissal of Steven Piersee's petition for habeas corpus relief under K.S.A. 2014 Supp. 60-1501. Piersee has failed to show any legal basis for the relief he seeks—his release from treatment and detention as a sexually violent predator. See K.S.A. 59-29a01 *et seq.*