NOT DESIGNATED FOR PUBLICATION

No. 122,436

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEVIN TAMAR DAVIS,
*Appellant*,

v.

DAN SCHNURR,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Opinion filed December 4, 2020. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Jon D. Graves*, legal counsel, Kansas Department of Corrections, for appellee.

Before HILL, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: Kevin Davis—who is a convicted sex offender incarcerated at the Hutchinson Correctional Facility (HCF) appeals from the district court's dismissal of his K.S.A. 60-1501 petition. He filed his petition after the Kansas Department of Corrections (KDOC) denied his grievance relating to several policies and procedures relating to the management of sex offenders incarcerated at HCF. The district court dismissed Davis' K.S.A. 60-1501 petition for failing to state a claim upon which relief can be granted. On appeal, he contends that his constitutional rights were violated because sex offenders are treated differently than other HCF inmates. Based on our review of the record, we do not find Davis' arguments to be persuasive. Thus, we affirm.

1

On July 8, 2015, Davis was convicted of two counts of aggravated indecent liberties with a child less than 14 years of age. The district court ordered Davis into the custody of the KDOC to serve his sentence. At all times relevant to this appeal, he has been incarcerated at HCF. Due to Davis' status as a sex offender, KDOC manages him under HCF Internal Management Policy and Procedure (IMPP) 11-115A.

On August 10, 2018, Davis filed a grievance with his unit team questioning various policies at HCF that treat sex offenders different than other inmates. In particular, in his grievance, Davis raised the following questions:

"I. Why Medium custody prisoners are restricted from an open door policy whereby to visit Unit Teams, when there is [cameras] in the unit, and H.C.F. have placed a new [camera] system therein it facility.

"II. Why segregational prisoners get to wear [their] shirt[s] off during yard, and Medium custody prisoners are restricted.

"III. Why Medium custody prisoners [in] D I & D2 [are] restricted from there State/inmate funded microwave, when D3 & E-Unit which are Medium custody prisoners are not restricted.

"IV. Why D1 & D2 Medium custody prisoners are locked down 23 hrs/w out day room, and D3 & E-Unit which are Medium custody prisoners have day room and are not locked down 23hrs.

"V. Why D1 & D2 Medium custody prisoners [are] restricted from free use of the phone & kiosk, when D3 & E-Unit which are Medium custody prisoners have free use of both.

"VI. Why [is] H.C.F. restricting it prisoners [from using] the law library restroom, when . . . the prisoner employees have free use of it.

"VII. Why D1 & D2 Medium custody prisoners are being restricted from taking showers when need be/w out [supervision], when D3 & E-Unit which are Medium custody prisoners have free use of showers/w out [supervision].

"VIII. Why D1 & D2 Medium custody prisoners are being subjected to extreme heat/w out AC, when D3 & E-Unit which are Medium custody prisoners have free use of AC all year round.

"[IX]. Why H.C.F. restrict[s] its prisoners of [their] state issued 'BOOTS', just because one does not have a state issuing job.

"X. Why is H.C.F. closing its law library for long period[s] of time, because . . . state employees [go] on vacation, when in fact the state employees have no jurisprudence w/ the courts; this really hurt prisoners due process/w the courts.

"XI. Should the Swatting law [enacted] by the Kansas [Legislature] apply to the Kansas Department of Correction.

"XII. Why is H.C.F. undermining Federal law; when it comes to adequacy in the Law library whereby prisoners hardship inter alia is being ignored.

"XIII. Why [has] H.C.F. as a State agency refuse[d] to come out of comfortable/w being uncomfortable; whereas the slum[i]ness of them is very clear and not spary its [facility] for insect."

"XIV. Why H.C.F. as a State agency refuse[s] to up date its prisoners mattress. The high court does not except the prisons defense, that it don't have enough money.

"XV. When was the last year H.C.F. thereby was [in compliance] with its prison condition for [accreditation]."

In his grievance, Davis also asserted:

"XVI. Just as the prisoners has no rights to choose, whom he/she wants as a lawyer therein the Court system; the prisons official here at H.C.F., also has no rights to choose a Jailhouse lawyer for a [particular individual] prisoners."

The unit team found that no action was warranted because "HCF is operating within policy." Subsequently, Davis appealed the unit team's decision to the warden. On August 21, 2018, the warden concurred with the unit team's decision and advised Davis of his right to appeal to the Secretary of Corrections. Although Davis filed an appeal with the Secretary of Corrections, the Secretary's designee upheld the warden's decision on August 30, 2018.

3

On October 4, 2018, Davis filed a pro se K.S.A. 60-1501 petition in the district court. In his petition, he claimed that HCF had perpetrated "invidious discrimination" against him. However, Davis did not allege any facts or arguments under the heading "ARGUMENTS & FACTS" section of his petition. Instead, he attached 35 pages of documents that primarily related to the procedural history of his grievance. Moreover, Davis failed to seek any specific relief or remedy. On the same day, Davis filed another document entitled "Jurisdiction and Venue" in which he requested injunctive relief.

In response, HCF filed a motion to dismiss or strike Davis' K.S.A. 60-1501 petition for failure to state a claim upon which relief can be granted. HCF also noted that it was unclear whether Davis had actually exhausted his administrative remedies as he alleged. In addition, HCF addressed the second filing made by Davis. In doing so, it noted that the document "references a summary of facts that doesn't exist and otherwise doesn't give any explanation of what the lawsuit is about, what constitutional violations are alleged and what facts support each such violation."

On December 12, 2018, Davis filed a "MOTION OF CORRECTED COMPLAINT" in which Davis asserted that he is a medium security inmate. He claimed that his right to equal protection under the law had been violated and that HCF's policies constituted cruel and unusual punishment as well as a denial of due process. In this filing, Davis failed to allege that he had exhausted his administrative remedies. HCF filed a second motion to dismiss on January 7, 2019.

The district court held a hearing on January 16, 2019. At the conclusion of the hearing, the district court found that Davis "fail[ed] to file a petition which alleges facts which . . . show a violation of the constitution and that . . . he has pursued the administrative remedies for those violations to conclusions [before he] filed this case."

"Later, the district court journalized its decision and found that the documents Davis had attached to his K.S.A. 60-1501 petition failed to state a claim upon which relief could be granted. The district court explained that Davis had asserted no facts to support his position and that his subsequent pleadings failed to show that he exhausted his administrative remedies. As a result, the district court dismissed Davis' K.S.A. 60-1501 petition. Thereafter, Davis filed a timely notice of appeal.

ANALYSIS

K.S.A. 2019 Supp. 60-1501(a) provides that "any person in this state who is detained, confined or restrained of liberty on any pretense whatsoever . . . may prosecute a writ of habeas corpus in the supreme court, court of appeals or the district court of the county in which such restraint is taking place." Accordingly, a person involuntarily confined in the KDOC may petition the court under K.S.A. 60-1501 for a declaration that his or her constitutional rights are being violated. To avoid dismissal of his or her K.S.A. 60-1501 petition, an inmate must allege either:  (1) shocking or intolerable conduct; or (2) continuing mistreatment of a constitutional stature. *Johnson v. State*, 289 Kan. 642, 648-49, 215 P.3d 575 (2009); *White v. Shipman*, 54 Kan. App. 2d 84, 90, 396 P.3d 1250 (2017).

"[I]f, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists," then dismissal is proper. *Johnson*, 289 Kan. at 648-49; see K.S.A. 2019 Supp. 60-1503(a). On appeal, we exercise unlimited review of a dismissal of a K.S.A. 60-1501 petition. *Johnson*, 289 Kan. at 248-49. Our task is to determine if the facts alleged in the petition—and reasonable inferences derived from those facts—state a claim for relief. See *Schuyler v. Roberts*, 285 Kan. 677, 679, 175 P.3d 259 (2008).

5

The United States Supreme Court has declared that a prison inmate retains constitutional rights that are consistent with the status of a prisoner and with the legitimate penological objectives of the corrections system. *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S. Ct. 1475, 149 L. Ed. 2d 420 (2001) (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 [1974]); *Washington v. Werholtz*, 40 Kan. App. 2d 860, 863-64, 197 P.3d 843 (2008). Consequently, the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. *Shaw*, 532 U.S. at 229. When a prisoner challenges a prison regulation's impingement upon his or her constitutional rights, a court analyzes the validity of the regulation under the rational basis test to determine if it is "'reasonably related to legitimate penological interests.' [Citation omitted.]" *Pool v. McKune*, 267 Kan. 797, 804, 987 P.2d 1073 (1999).

Before addressing the specific arguments presented by the parties, it is important to recognize that the problems faced by prison officials are often complex and courts are particularly "'ill equipped'" to deal with these complexities. As a result, the United States Supreme Court suggests that we should give deference to the judgments of prison officials in upholding the regulations against constitutional challenges. *Shaw*, 532 U.S. at 229. Ultimately, it is prison officials—not courts—who remain the primary arbiters of the problems that arise in prison management. 532 U.S. at 230.

On appeal, Davis contends that the district court erred in denying his K.S.A. 60-1501 petition. In response, HCF contends that the district court's dismissal should be affirmed for several reasons. Specifically, HCF argues that Davis has failed to exhaust his administrative remedies and that he failed to state a claim upon which relief can be granted.

HCF suggests that Davis failed to exhaust his administrative remedies as required by K.S.A. 2019 Supp. 60-1501 and K.S.A. 75-52,138. In his original K.S.A. 60-1501

petition, Davis alleged that he had exhausted his administrative remedies by following the grievance procedure to its conclusion. Based on our review of the documents attached to Davis' petition, it appears that he did exhaust his administrative remedies as to the questions he raised in the grievance that he filed with the unit team. On the other hand, we find that he failed to exhaust his administrative remedies as to the claims Davis asserted in the document he called a "corrected complaint" that was filed with the district court because they were not presented to the unit team, to the warden, or to the Secretary of Corrections. Accordingly, we find that while Davis exhausted his administrative remedies as to his original grievance, he failed to exhaust his administrative remedies regarding any additional facts or arguments raised in the "corrected complaint" filed in district court.

Turning to the question of whether the district court erred in dismissing Davis' K.S.A. 60-1501 petition for failure to state a claim upon which relief can be granted, we look to K.S.A. 2019 Supp. 60-212(b)(6). A district court considering a motion to dismiss filed under K.S.A. 2019 Supp. 60-212(b)(6) must decide the motion from the well-pleaded facts of the petition. Under K.S.A. 2019 Supp. 60-210(c), written documents attached as an exhibit to a pleading are to be considered when ruling on a motion to dismiss. See *Sperry v. McKune*, 305 Kan. 469, Syl. ¶¶ 1, 2, 384 P.3d 1003 (2016). "Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review." *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013).

After reviewing the K.S.A. 60-1501 petition and the documents attached to it, we agree with the district court that Davis failed to state a claim upon which relief can be granted. As discussed above, Davis failed to provide any facts or legal argument in support of his claim on the face of his petition. Although the documents he attached to his petition contained a lengthy list of questions he has regarding HCF's policies as well as various conditions at the facility, Davis failed to provide any facts to show how these

policies or conditions personally affect him. In fact, he did not even identify his own status or classification at HCF.

Davis does not allege facts to show that he has actually been subjected to the policies or conditions of which he complains nor does he claim that he has suffered a cognizable injury. A cognizable injury is an "injury in fact," or one that is concrete, particularized, actual, or imminent. See *Gannon v. State*, 298 Kan. 1107, 1123, 319 P.3d 1196 (2014). In other words, Davis has failed to allege any specific injury, much less one that is concrete, actual, or imminent.

Under these circumstances, we find that Davis has failed to allege a violation of his rights of a constitutional stature. Likewise, we find that Davis did not ask for any form of relief in his K.S.A. 60-1501 petition. Because Davis did not allege any facts or legal argument in support of his challenge to the visitation policy—and failed to request specific relief—we conclude that he has not stated a claim upon which relief can be granted.

Although Davis claims that HCF violated his constitutional rights by enacting polices that treat sex offenders differently than other inmates, he fails to provide any factual contentions to support this argument. Furthermore, we find that HCF has a valid, rational, and legitimate penological interest in placing restrictions on sex offenders that may be different from those imposed upon other inmates. Accordingly, we conclude that Davis has failed to allege shocking or intolerable conduct nor has he alleged continuing mistreatment of a constitutional stature. *Johnson*, 289 Kan. at 648-49.

We, therefore, conclude that the district court's dismissal of Davis' K.S.A. 60-1501 petition should be affirmed.

Affirmed.

8